198 So.2d 227 (1967)
Robert GUASTELLA et al.
v.
Earl R. WARDELL et al.
No. 44399.
Supreme Court of Mississippi.
April 24, 1967.
*228 Martin & Taylor, Gulfport, for appellants.
Palmer & Stewart, Robert B. Adam, Gulfport, for appellees.
ETHRIDGE, Chief Justice:
Earl R. Wardell and others, appellees, brought this action against appellants, Robert and Rosario Guastella and Gulf Terrace, Inc., to enjoin them from constructing apartment buildings on some of the lots in a subdivision in Pass Christian, and to impose upon the subdivision restrictive covenants previously prepared by the defendants, but modified in material respects before they were filed for record. The basis of the suit was fraud and misrepresentation, both affirmative and by silence at a time when defendants were under a duty to reveal the facts. The Chancery Court of Harrison County enjoined defendants from constructing apartment buildings in the subdivision, and directed that the proposed restrictive covenants, without the changes made by Robert Guastella, should be filed for record for the benefit of all landowners in the subdivision. The covenants as changed were set aside and cancelled. We affirm that decree.
Defendants caused to be formed into a subdivision a strip of land bordering on U.S. Highway 90 and the Gulf of Mexico, with a front of 102 feet, and extending northerly 1500 feet to a public road. The subdivision, Gulf Terrace, is located on valuable beach property in Pass Christian and is composed of 30 lots. The south five lots, running in a tier from south to north, are bounded on the west by an 18 foot wide street. The remainder of the lots front on the east and west sides of this street. Several purchasers of land in the subdivision, Earl R. Wardell and wife, William Ezelle and wife, and Miss Alice H. Sackett, averred in their bill of complaint that they had purchased their lots upon representations by the defendants that the subdivision was restricted, limited to residential construction, and would have a pool, park area, and pier. Landowners to the east and west joined in the suit. Defendants proposed to construct three buildings on the south five lots with 30 apartment units, each to be three stories in height. This would require a sewage disposal facility, to be used until the city constructed a proposed city sewage disposal plant within the next year or so.
Complainants constructed substantial homes on these lots. The Wardells paid $26,900 for their house. Each of them examined the land and surrounding area before buying, and conducted negotiations with defendants or their agents. The lots were numbered, and many of them had signs indicating that a "home" was to be built on the lots. Defendants advertised that luxury homes would be built in the subdivision, and that a pool, park area, and pier would be constructed. Ezell purchased lot seven on July 1, 1965. Miss Sackett bought her property on August 21, 1965. Both deeds stated that they were subject to all restrictions, reservations and easements of record.
Wardell purchased lot 26. Ellis, defendants' selling agent, told Wardell that the subdivision had no zoning regulations, but it did have restrictive covenants. Rosario Guastella advised Wardell before the sale that the subdivision was restricted to houses, and that he had nothing to worry about in *229 this respect. However, Wardell discussed the matter with his attorney, Fred Mannino, and inquired about restrictive covenants.
Mannino checked the records and found none of record. He requested Robert Guastella to file restrictive covenants. In response, Guastella supplied Mannino with a copy of restrictive covenants, not then recorded or executed, which prohibited construction in the subdivision of anything other than private residences, with none to shelter more than two families. Mannino obtained an interim policy of title insurance, and attached to his application for the title binder a copy of these covenants given him by Robert Guastella. A title binder was issued in June 1965, subject to those covenants, and it was mailed to the lending agency. Mannino, Wardell's attorney, had an abstract company check the records on several occasions to determine if covenants had been filed, and he found they had not.
The sale by defendants to Wardell, and the closing of the loan from a lending agency to Wardell, were made in Mannino's law office on Tuesday, July 6, 1965. On Saturday morning, July 3, Robert Guastella had filed certain executed restrictive covenants in the office of the chancery clerk at Gulfport. The filed copy omitted the phrase "all lots" as being subject to residential restrictions and inserted in place thereof a statement that only lots 7 and 26 (purchased by Ezell and Wardell) were subject to restrictive covenants. The following two days, Sunday and Monday, were legal holidays and the courthouse was closed. On Tuesday, July 6, before the transaction was completed, Robert Guastella delivered to Mannino a receipt from the chancery clerk showing that restrictive covenants had been filed for record, but stating nothing further.
Mannino's secretary testified that she reminded her employer to request Guastella to bring a copy of the protective covenants to the closing transaction. She said that Guastella delivered the receipt and the copy of the proposed covenants covering "all lots" in the subdivision, probably on the morning the loan was closed. Mannino said that, at the time he closed the loan, the covenants which he had in his possession were what he thought were the recorded covenants. He later found there were the variations limiting the covenants to the named lots.
On the other hand, Guastella said that at least a month before closing, he delivered to Mannino at his request an unexecuted "dummy" copy of the restrictions, "to process the sale." The copy which he delivered did not restrict the covenants to only two lots. Moreover, the clerk's receipt of the recorded restrictions did not indicate any such limitations. Guastella said that he did not want to record any restrictions on any lots "except the ones that were absolutely necessary." Asked why he did not advise Mannino that the earlier copy was not the one filed for record, he replied, "This was just to indicate what the general idea was of the restrictions out there." Guastella said that originally he did not intend to put restrictions on any of the lots, because he owned the entire subdivision.
The chancery court held: Guastella's explanation that he could not obtain a recorded copy of the covenants from the chancery clerk on that morning raised the question as to why he did not furnish the attorney with a true copy of the covenant which he filed for record, and why he did not point out the changes. People are presumed to contemplate the normal consequences of their actions. The closing attorney had the right to rely on the covenants delivered to him by Guastella until he was otherwise notified by him, or until they had been placed on record and the attorney had a reasonable opportunity to check the records. The court found that this was not reasonably possible at the time of the transaction, considering the normal manner in which land sales are handled and loans are closed in Harrison County. The original draft of the protective covenants *230 delivered to Mannino expressly provided that all lots in the subdivision should be residential lots and restricted accordingly, to housing not to exceed two families and two stories in height. Mannino relied on the protective covenants furnished him by Guastella, who remained silent at the time. It would be "unconscionable to now allow defendants to repudiate this representation to complainants and their attorney, in that defendant failed to speak when he had a duty to speak. * * *"
The undisputed facts, and those found by the chancellor, reveal considerably more than mere silence by Guastella. Silence, in order for there to be liability for nondisclosure, must relate to a material fact or matter known to the party and which it is his legal duty to communicate to the other contracting party. Shortly before the sale to Wardell, Guastella delivered to Wardell's attorney, Mannino, an unexecuted copy of restrictive covenants, applicable to "all lots" in the subdivision. Guastella did this in order to enable Mannino to process the sale. Yet on the Saturday preceding the loan closing he recorded restrictive covenants applicable only to two out of thirty lots in the subdivision. On Tuesday morning he delivered to Wardell's attorney a receipt from the chancery clerk reflecting only that restrictive covenants had been filed for record.
Under those circumstances, Guastella's silence amounted to an affirmation that a state of things existed which did not exist  that the recorded covenants covered "all lots" rather than only two. With knowledge of these material facts as to the limitations of the covenants as he had recorded them, Guastella was under a duty to disclose this information. Yet he remained silent. Such a case of failure to speak amounted to suppression of material facts which should have been disclosed, and is in effect a fraud. Restatement (Second) of Torts § 551 (Tent. Draft No. 12, 1966); 23 Am.Jur., Fraud and Deceit §§ 77, 78 (1939, Supp. 1966); 37 C.J.S. Fraud §§ 15, 16 (1943).
A party to a business transaction, under these circumstances, is under a duty to disclose to the other party, before the transaction is consummated, information which will correct previous representations made to the other party which are untrue or misleading. The state of the covenants as filed for record was a fact basic to the transaction, and Guastella must have known that Wardell was entering into the transaction under a mistake as to that fact, and would reasonably expect a disclosure of the truth. Restatement (Second) of Torts § 551 (Tent. Draft No. 12, 1966).
Guastella filed for record the restrictive covenants on Saturday, July 3. The next two days were legal holidays, and the sale was completed on July 6. The chancellor found that on the latter date a certified copy of the recorded covenants could not be obtained from the clerk's office. Because of Guastella's failure to disclose and these circumstances, we do not think the doctrine of constructive notice is pertinent. The rule is summarized in 37 C.J.S. Fraud § 34(c) (1943):
Where the fact misrepresented or the matters which are concealed are peculiarly within the representor's knowledge and the representee is ignorant thereof, it is generally held that, although the real fact appear on the public records, the representee is under no obligation to examine the records, and his failure to do so does not defeat his right of action. This is especially true where the very representations relied on induced the hearer to refrain from an examination of the records, * * * In such cases the doctrine of constructive notice is inapplicable.
Parham v. Randolph, 5 Miss. (4 How.) 435 (1840), applied this doctrine, and held, in effect, that fraud may be predicated on false representations or concealments, although the truth could have been ascertained *231 by an examination of public records. Accord 23 Am.Jur., Fraud and Deceit § 163 (1939).
Affirmed.
BRADY, PATTERSON, INZER and SMITH, JJ., concur.