# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00166-SCT

*JORDAN KYLE SMITH, A MINOR, BY AND*
*THROUGH HIS NATURAL MOTHER AND NEXT*
*FRIEND, STEPHANIE SMITH*

*v.*

*GILMORE MEMORIAL HOSPITAL, INC. AND*
*GILMORE HEALTH SYSTEMS, INC.*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/2005 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROY O. PARKER, SR. |
| ATTORNEYS FOR APPELLEE: | JOHN G. WHEELER |
| | MARGARET SAMS GRATZ |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 03/22/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case comes to this Court on writ of certiorari from a judgment of the Court of Appeals which reversed and remanded the circuit court's grant of summary judgment. Jordan Smith, a minor, by and through his mother Stephanie Smith (Smith), sued Gilmore Memorial Hospital, Inc., Gilmore Health Systems (GMH), G. Edward Bryant, Jr. (Dr.

Bryant) and others for alleged injuries received when Dr. Bryant mistakenly performed a surgical operation on Jordan Smith's unimpaired left eyelid rather than on his impaired right eyelid.[1]

¶2.     GMH moved for summary judgment, arguing entitlement to judgment as a matter of law based on Smith's failure to designate a medical expert witness as required in Mississippi to prove a claim of medical negligence.  Smith responded to GMH's motion by advancing he was exempt from producing an expert witness under the "layman's exception."  The circuit court declined to apply the layman's exception and granted GMH's motion for summary judgment.  Smith appealed.  The Court of Appeals reversed the decision of the circuit court and remanded the case.  *Smith v. Gilmore Mem'l Hosp., Inc.*, 2006 Miss. App. LEXIS 402 (Miss. Ct. App. 2006).  GMH appealed and this Court granted certiorari.

¶3.     Finding that the circuit court's grant of summary judgment was proper, we reverse the judgment of the Court of Appeals and affirm the circuit court's grant of summary judgment in favor of GMH.

**FACTS**

¶4.     On March 28, 2001, then two-year-old Jordan Smith (Jordan) was admitted to Gilmore Memorial Hospital to undergo elective outpatient surgery to repair a ptosis[2] of his right eyelid.  Dr. Bryant, who was not an employee of GMH, was to perform the corrective surgery on the right eye and conduct an examination under anesthesia to the left eye.  Prior

---

[1]Dr. Bryant and the other defendants have previously settled with Smith and their cases have been dismissed.

[2]Ptosis is a condition where the eyelid droops over the eye.  Ptosis, if left uncorrected, can result in damage to the eye's visual development.

2

to beginning the surgery, Dr. Bryant confirmed with the operating room staff that the surgery was to be conducted on the right eye. Nonetheless, Dr. Bryant inadvertently began operating on the left eye.

¶5.     After making only a small incision, Dr. Bryant realized his mistake. He instructed Shirley Phillips (Nurse Phillips), the circulating nurse for the operating room, to contact Jordan's mother, Stephanie Smith (Smith), to confirm that the surgery was to be performed on the right eye. Smith alleges that during the conversation with Nurse Phillips that Smith asked if everything was all right and that Nurse Phillips assured her that "everything was fine."[3]

¶6.     After Nurse Phillips's discussion with Smith, Dr. Bryant completed the operation on Jordan's right eyelid. Following the procedure, Dr. Bryant discussed his mistake with Smith. The mistake resulted in Jordan's left eye being swollen for approximately two weeks. Jordan suffered no long-term damage to his left eye and now has good vision in both eyes.

¶7.     In his complaint against GMH, the Smiths alleged that by not telling Mrs. Smith about Dr. Bryant's mistake prior to continuing the operation on Jordan's right eye, that GMH and Nurse Phillips failed to meet the required standard of care. The circuit court rejected Smith's argument, holding:

> In the absence of guidance from a qualified health expert. . . a lay jury would not be able to determine the standard of care for a surgical nurse in the applicable circumstance where the attending surgeon unilaterally and independently exercised his judgment not to tell a minor patient's parent about

---

[3]The parties have differing accounts of the details of the conversation between Smith and Nurse Phillips. Since this is a case of summary judgment, inferences will be resolved in the light most favorable to the non-moving party, Smith. *See Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983) ("When doubt exists whether there is a fact issue, the non-moving party gets its benefit.").

a surgical mishap and specifically asked the surgical nurse to contact the parent for the purpose of confirming which eyelid was to be surgically repaired.

The Court of Appeals reversed and remanded the grant of summary judgment, concluding that the layman's exception applied and that whether Nurse Phillips failed to meet the standard of care was a question of fact that should be decided by a jury. We granted certiorari.

**ISSUE**

**I.** **Does the Layman's Exception Apply Where the Jury Would Be Required to Determine the Standard of Care of a Medical Professional?**

STANDARD OF REVIEW

¶8.     "We employ the de novo standard in reviewing a trial court's grant of summary judgment." ***Brown v. J.J. Ferguson Sand & Gravel Co.***, 858 So. 2d 129, 130 (Miss. 2003) (citing ***O'Neal Steel, Inc. v. Millette***, 797 So. 2d 869, 872 (Miss. 2001)). The moving party shall be granted judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c).

¶9.     "Summary judgments, in whole or in part, should be granted with great caution." ***Brown***, 444 So. 2d at 363.   However, "[s]ummary judgment is mandated where the respondent has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" ***Wilbourn v. Stennett, Wilkinson & Ward***, 687 So. 2d 1205, 1214 (Miss. 1996) (citing

4

*Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 683 (Miss. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## DISCUSSION

¶10.    In asserting his negligence claim, Smith argued that GMH breached its required standard of care when Nurse Phillips failed to inform Smith's mother of Dr. Bryant's mistake prior to his beginning operation on the correct eyelid.  However, Smith failed to designate an expert witness to testify to the appropriate standard of care.  "'In a medical malpractice action, negligence cannot be established without medical testimony that the defendants failed to use ordinary skill and care.'"  *Travis v. Stewart*, 680 So. 2d 214, 218 (Miss. 1996) (quoting *Phillips v. Hull*, 516 So. 2d 488, 491 (Miss. 1987)).  Indeed, in the absence of a recognized exception,   "expert testimony is generally required to survive summary judgment." *Sheffield v. Goodwin*, 740 So. 2d 854, 856 (Miss. 1999) (citing *Coleman*, 706 So. 2d at 698-99; *Travis,* 680 So. 2d at 218; *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 795 (Miss. 1995)).  As such, the circuit court properly determined that Smith, without providing a medical expert witness, would not be able to prove his prima facie case of medical negligence in this complicated case, therefore the trial court appropriately granted summary judgment.

¶11.    Notably, this Court has long recognized an exception to the general rule requiring a medical expert in "instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." *Coleman,* 706 So. 2d at 698 (quoting *Erby v. North Miss. Med. Ctr.*, 654 So. 2d 495, 500 (Miss. 1995).  *See also Hammond v. Grissom*, 470 So. 2d 1049, 1052 (Miss. 1985); *Trapp v. Cayson*, 471 So. 2d 375, 380 (Miss.

5

1985); ***Dazet v. Bass***, 254 So. 2d 183, 187 (Miss. 1971). This exception has been termed the "layman's exception." The layman's exception is commonly applied in situations where physicians or hospital staff have left foreign objects inside the patient, ***Coleman***, 706 So. 2d at 696, or given the patient the wrong medication, ***Dailey v. Methodist Med. Ctr.***, 790 So. 2d 903 (Miss. 2001). However, an application of the layman's exception not only to situations where there is blatant negligence but also to situations involving judgment calls made by professionals would be overly broad.

¶12. "Medical malpractice cases generally require expert witnesses to assist the trier of fact to understand the evidence." ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So. 2d 1346, 1357 (Miss. 1990) (citing ***Kilpatrick v. Miss. Baptist Med. Ctr.***, 461 So. 2d 765, 768 (Miss. 1984)) (citations omitted). In the instant case, at first glance it might appear to a layman, even without the assistance of a medical expert, that the *physician* was negligent. Dr. Bryant has admitted to the plaintiff that he made a mistake. This, however, is not the situation with which this Court is confronted. Here, we must decide whether a nurse failed to meet the required standard of care by choosing not to go beyond her supervising physician's authority and inform a patient's mother of the doctor's initial mistake. To ask a jury to determine whether this was beyond the standard of care without being told what constituted the proper standard of care by an expert would be inappropriate.

¶13. In ***Sheffield v. Goodwin***, 740 So. 2d 854 (Miss. 1999), this Court declined to apply the layman's exception to allow a dental patient to testify that her doctor acted negligently because he "did nothing." ***Sheffield***, 740 So. 2d at 857. We stated "[d]iagnosing symptoms and prescribing antibiotics is beyond the 'common knowledge of laymen.'" ***Id.*** at 858.

6

Diagnosing symptoms and prescribing antibiotics are activities that involve a medical professional's judgment–judgment that would require a medical expert to determine whether it failed to meet the required standard of care.

¶14. Similarly, a nurse's decision not to go beyond her supervisor's authority to inform a patient's mother of an initial mistake is a judgment call. "Lay testimony is sufficient to establish only those things that are purely factual in nature or thought to be in the common knowledge of laymen." **Sheffield**, 740 So. 2d at 857 (quoting **Coleman**, 706 So. 2d at 698). Since Nurse Phillips' actions involved a judgment call, and not something "purely factual in nature," expert testimony is required.

¶15. We note that Judge Irving of the Mississippi Court of Appeals correctly wrote in his dissent the importance of the relationship between patients, nurses and physicians. **Smith**, 2006 Miss. App. LEXIS at *14 (Irving, J., dissenting). "The premature release of medical information, whether to the patient or another, can sometimes have severe negative consequences for the patient. In my judgment, a layperson is ill equipped to know the exact point in time, during a medical procedure, when information regarding a medical mishap should be shared with the patient." **Id**. We agree with the Court of Appeals's dissent.

¶16. Here, the Court of Appeals erred by concluding that this case is one in which a jury could understand the standard of care without the assistance of an expert witness. A lay jury would not be able to determine the proper standard of care that should have been exercised by Nurse Phillips. Without knowing the proper standard of care, the jury would be unable to determine whether Nurse Phillips breached that standard of care by not going beyond her direct supervisor's orders and notifying Smith of Dr. Bryant's mistake.

7

## CONCLUSION

¶17.    We reverse the Court of Appeals and reinstate the trial court judgment for the reasons cited above.

¶18.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

      **WALLER, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.  COBB, P.J., NOT PARTICIPATING.**

      **EASLEY, JUSTICE, DISSENTING:**

¶19.    Stephanie Smith (Smith) took her two-year old son to Gilmore Memorial Hospital (GMH) to have corrective surgery performed on his *right* eyelid.  Smith's son suffered from a condition known as ptosis where the eyelid droops over the eye, which can affect the eye's visual development.  There was nothing wrong with Smith's son's *left* eyelid that required surgery.

¶20.    Dr. Edward Bryant performed the surgery.  When Dr. Bryant started to operate on the *left* eyelid, he confirmed with the operating staff that he was to operate on the *right* eyelid.  Despite that, Dr. Bryant began operating on the *left* eyelid, making an incision.  When Dr. Bryant realized that he cut on the left eyelid, he instructed Nurse Shirley Phillips, the circulating nurse, to check with the minor child's mother to see which eyelid he was supposed to operate on.

¶21.    Nurse Phillips contacted Smith.  Smith alleged, in the facts submitted for summary judgment and used for purposes of this appeal, that Nurse Phillips then told her that

8

"everything was fine." Nurse Phillips did not tell Smith that the doctor had *already* cut on the wrong eye. Smith was not informed of the mistake until her son was in recovery.

¶22. Smith sued GMH alleging that Nurse Phillips had failed to meet the standard of care by not informing her of her son's condition and falsely telling her that everything was fine. Dr. Bryant settled the medical malpractice claim against him. On appeal, the majority holds that Smith was required to have a qualified medical expert in order to avoid summary judgment.

¶23. I agree that in the vast majority of cases of medical malpractice a qualified medical expert is required to assist the trier of fact in understanding the evidence and survive a motion for summary judgment. *See Sheffield v. Goodwin*, 740 So. 2d 854, 856 (Miss. 1999); *Travis v. Stewart*, 680 So. 2d 214, 218 (Miss. 1996); *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1357 (Miss. 1990). "Absent error so obvious that a layman could easily determine fault, expert testimony is generally required to survive summary judgment and establish the negligence of a physician." *Sheffield*, 740 So. 2d at 856.

¶24. However, this Court has specifically recognized a "layman's exception." *Coleman v. Rice,* 706 So. 2d 696, 698-99 (Miss. 1997) (no expert was required where a foreign object was left in the body by a physician or hospital staff); *see also Dailey v. Methodist Med. Ctr.*, 790 So. 2d 903, 912 (Miss. Ct. App. 2001) (citing *Coleman*, 706 So. 2d at 698-99) (no expert was required where patient was given the wrong medication). In *Coleman*, 706 So. 2d at 698-99, this Court held:

> A layman can understand, without expert testimony, that the unauthorized or unexplained leaving of an object inside a patient during surgery is negligence. Therefore, the Court of Appeals was correct in reversing summary judgment

9

granted in favor of Drs. Rice and Reddix. Dorothy Coleman was not required to support her claim, based on res ipsa loquitur, with expert testimony.

Drs. Rice and Reddix both relied in their answers and in their motion for summary judgment on the assertion that nurses were responsible for keeping the sponge count during Coleman's surgery, and further that this is common practice. This defense is negated by our decision in *Saucier* [*v. Ross*, 112 Miss. 306, 73 So. 49 (1916)], 112 Miss. at 314, 73 So. at 50, where this Court stated:

> It is no answer to plaintiff's suit that the rubber tube may have been left in her wound by an attendant nurse or another physician in the hospital. She testified that Dr. Ross was her physician and operated on her and attended her while in the hospital, and that the other physicians were acting under his directions in the treatment of her, and that he discharged her from the hospital at the time she left.

Though decided in 1916, Saucier has never been overruled and remains the law in this jurisdiction. It comports with case law from other jurisdictions which hold that while responsibility for sponge counts may be delegated to support staff, liability cannot be. A surgeon leaving a sponge inside a patient is not negligent per se, but a presumption of negligence is raised, which the surgeon may attempt to rebut or explain. *Ravi v. Coates*, 662 So. 2d 218 (Ala. 1995); *Tice v. Hall*, 310 N.C. 589, 313 S.E.2d 565 (N.C. 1984).

The situation in this case is analogous to the cases discussed above involving the layman's exception.

¶25. The majority states: "To ask a jury to determine whether this was beyond the standard of care without being told what the proper standard of care by an expert would be inappropriate." Majority opinion, ¶ 12. With all due respect, I disagree. Here, the minor child fortunately suffered no long-term damage from the operation, and should Smith prevail at trial, I would expect that the damages in this case would be nominal.

¶26. However, I disagree that the facts of this case require an expert. In this case, Smith's allegations are merely that the nurse failed to inform Smith of her minor son's condition

10

when asked and the nurse should not have told her that her son was fine when the nurse was aware that the doctor had cut the wrong eye. These facts are for a jury to decide and an expert is not necessary for a jury to understand the issue. The purpose of requiring an expert in medical malpractice cases is to assist the trier of fact in understanding the evidence when medical questions as to proper treatment and the standard of care are raised.

¶27. Without question, most medical practice cases do involve complex medical questions and standards of care that are foreign to most jurors. But what reasonable juror cannot understand or rule on evidence presented that a nurse failed to truthfully inform a minor child's mother as to the status of her child in surgery? What parent would not have been concerned when his or her two-year-old child was in surgery and then was asked which eye was to receive the operation? What parent would not want to have been informed of what was really going on when he or she inquired? Would a parent stop the further operation on the correct eye had he or she been informed of the negligence already inflicted?

¶28. These allegations are not beyond the jury's abilities and understanding. No complex medical knowledge is required. This boils down to the trust that patients and their families put in their medical providers. That trust is undermined when false information is provided. The facts of this case are similar to situations where the wrong medication was given to a patient, and an expert was not required to support that allegation. *See **Dailey**, 790 So. 2d at 912.

> In **Dailey**, the Court of Appeals held:
>
> Our general rule is that medical negligence may be established only by expert medical testimony, with the exception for instances where a layman can

observe and understand the negligence as a matter of ***common sense and practical experience***.

***Id.*** (Emphasis added).

¶29.   In this case, the doctor operated on the wrong body part.  Instead of informing the minor child's family during the surgery of the mistake, the family was told by Nurse Phillips that everything was fine before the correct surgical procedure was performed on the correct body part.  What is complicated about that?  Surely, the jurors are capable of applying their common sense and practical experience in understanding these allegations.

¶30.   While my decision is solely based on the facts of this individual case, which is distinguishable from the normal procedure of retaining an expert in a medical practice case, I find that this case falls under the layman's exception.  The record reflects that the "error [is] so obvious that a layman could easily determine fault." ***Sheffield***, 740 So. 2d at 856.  Based on this Court's established and continued recognition of the layman's exception, I must respectfully dissent.  Accordingly, I would affirm the judgment of the Court of Appeals which reversed the judgment of the circuit court and remanded the case to the circuit court.

**DIAZ, J., JOINS THIS OPINION.**