910 So.2d 1223 (2005)
Timothy MOONEYHAM, Appellant
v.
PROGRESSIVE GULF INSURANCE COMPANY and Progressive Casualty Insurance Company, Appellees.
No. 2004-CA-01516-COA.
Court of Appeals of Mississippi.
September 6, 2005.
*1224 William C. Walker, Jr., Jackson, attorney for appellant.
Danielle Daigle Ireland, David Keener Pharr, Jackson, Roy D. Campbell, III, Margaret Oertling Cupples, Birmingham, AL, H. Richmond Culp, III, Jackson, attorneys for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Timothy Mooneyham ("Mooneyham") appeals the decision of the trial court granting Progressive Gulf Insurance Company and Progressive Casualty Insurance Company's ("Progressive") motion for directed verdict. On appeal, Mooneyham asserts that the trial judge erred in granting the directed verdict. We find no error and affirm.

FACTS
¶ 2. On March 22, 2002, Mooneyham was rear ended by a Progressive insured. Fault was not disputed.
¶ 3. On March 29, 2002, Progressive's "quick response" adjuster, David Malone (Malone), met with Mooneyham and his then girlfriend Teresa Ralph ("Ralph").[1] Malone and Mooneyham agreed to settle *1225 Mooneyham's claim for property damage arising out of the accident for $206. This settlement is not disputed. Malone also offered to settle Mooneyham's personal injury claim. This settlement offer was disputed at trial. According to Progressive, the original offer was $500 for pain and suffering, up to $2,500 for past medical expenses, and up to $2,500 for future medical expenses. Ralph testified that the original offer was $500 for pain and suffering and all medical bills for up to three years. Mooneyham testified that the original offer was $500 for pain and suffering and all medical bills relating to the accident forever. Regardless of the dispute and conflicting testimony, Mooneyham rejected the offer.
¶ 4. Subsequently, Mooneyham hired attorney Richard Schwartz to represent him. Because Mooneyham had hired an attorney, his file was assigned to another Progressive adjuster, Bill Estes ("Estes"). On April 15, 2002, Estes wrote a letter to Schwartz and offered to settle Mooneyham's personal injury claim for $500 plus medical expenses accrued through April 19, 2002, which amounted to approximately $1,900. However, according to testimony, Schwartz never informed Mooneyham or Ralph of Estes' offer. Mooneyham and Ralph apparently learned of the offer for the first time at trial.
¶ 5. On April 18, 2002, Mooneyham contacted Estes and informed him that he was no longer represented by an attorney and expressed his desire to settle his personal injury claim with Progressive. Estes confirmed that Mooneyham was no longer represented by Schwartz, who had declined to continue the representation after his own investigation revealed that the case involved a "very low impact" accident.
¶ 6. On April 22, 2002, Estes contacted Mooneyham in an effort to settle his claim. Estes testified that he conveyed an offer to Mooneyham of "$500 only and no medicals." According to Estes, Mooneyham then handed the phone to Ralph, and Estes explained to her that the offer was "only for $500 and not the medicals." However, Ralph testified that there was no mention of medical bills in her conversation with Estes. According to both Estes and Ralph, Mooneyham took the phone back from Ralph and accepted Estes' settlement offer.[2] Estes then informed Mooneyham that he would have to sign a release before Progressive would issue a settlement check. Mooneyham testified that he received the release and signed it without reading it or having it read to him, and thereafter received a settlement check from Progressive for $500. The release made clear that Mooneyham would be paid a total of only $500 for his claim.
¶ 7. On September 4, 2002, Mooneyham filed a complaint against Progressive alleging fraud and bad faith. At trial, Mooneyham abandoned his bad faith claim. At the close of Mooneyham's case-in-chief, Progressive moved for a directed verdict. The trial court granted Progressive's motion, and Mooneyham now appeals to this Court.

STANDARD OF REVIEW
¶ 8. On appeal, we conduct a de novo standard of review of motions for directed verdict. Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992). When deciding whether the granting of a motion for directed verdict was proper by the lower court, this Court considers the *1226 evidence in the light most favorable to the non-moving party and gives that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial. Id. If the favorable inferences have been reasonably drawn in favor of the non-moving party so as to create a question of fact from which reasonable minds could differ, then the motion for directed verdict should not be granted and the matter should be given to the jury. Id.

ANALYSIS
¶ 9. Mooneyham's sole claim at trial was that Progressive engaged in fraud in the settlement of his personal injury claim. A plaintiff must prove the elements of fraud by clear and convincing evidence. Harrison v. McMillan, 828 So.2d 756, 767(¶ 38) (Miss.2002). In order to withstand Progressive's motion for directed verdict, Mooneyham must show by clear and convincing evidence the following elements of fraud:
(1) a representation;
(2) its falsity;
(3) its materiality;
(4) the speaker's knowledge of its falsity or ignorance of the truth;
(5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated;
(6) the hearer's ignorance of its falsity;
(7) his reliance on its truth;
(8) his right to rely thereon; and
(9) his consequent and proximate injury.
Bank of Shaw v. Posey, 573 So.2d 1355, 1362 (Miss.1990).
¶ 10. Mooneyham argues that Progressive made an actionable representation. He claims that Progressive promised to pay him $500 plus some medicals. However, there is no evidence in the record that such representation was made.
¶ 11. The record indicates that Malone initially offered to pay either up to $2,500 in past medical expenses and up to $2,500 in future medical expenses (Progressive's testimony) or all of Mooneyham's medical bills for three years (Ralph's testimony); or all of Mooneyham's medical bills forever (Mooneyham's testimony). Regardless, Mooneyham rejected this initial offer. A rejected offer cannot constitute an enforceable promise. When an offer has been rejected, it ceases to exist. See Harris v. Mickel, 15 F.3d 428, 431 (5th Cir.1994); 1 Williston on Contracts § 5:3 (4th ed.) 1999.
¶ 12. Estes made a subsequent offer to Mooneyham's then-attorney Schwartz to pay medical bills incurred through April 19, 2002, but this offer was never accepted nor was it ever known to Mooneyham.
¶ 13. While the testimony regarding Estes' April 22, 2002 telephone conversation with Mooneyham and Ralph is conflicting, the record shows that no one testified that Estes promised to pay $500 plus some medicals, which is what Mooneyham contends in his brief to this Court. Estes testified that the April 22nd offer was for $500 and no medicals; Ralph testified that there was no mention of medical expenses during the conversation; and Mooneyham testified that he did not remember the April 22nd conversation at all.
¶ 14. The records shows that Mooneyham signed a release before receiving a settlement check from Progressive. The release entitled "Full Release of all Claims and Demands" specifically stated:
I, Timothy Mooneyham, a single male, only, for and in consideration of the sum of five hundred dollars and 00/100 ($500.00), the receipt of which is hereby acknowledged, does (do) hereby for myself (ourselves), my (our) heirs, executors, administrators, successors and assigns *1227 and any and all other persons, firms, employers, corporations, associations, or partnerships release, acquit and forever discharge Terry Brown and Barbara D. Brown of and from any and all claims, actions, causes of actions, demands, rights, damages, costs, property damage, loss of wages, expenses, hospital, medical and nursing expenses, accrued or unaccrued claims for loss of consortium, loss of support or affection, loss of society and companionship on account of or in any way growing out of, any and all known and unknown personal injuries and damages resulting from an automobile accident which occurred on or about March 22, 2002, at or near Pontotoc, Mississippi.

The release clearly states that Mooneyham was to receive only $500. It also makes clear that "any and all claims for expenses, hospital, medical and nursing expenses" are discharged.
¶ 15. Mooneyham also argues that Progressive failed to disclose that he would have to pay any and all medical expenses out of the $500. An omission constitutes fraud only if the speaker owed the hearer a duty of disclosure. See Strong v. First Family Fin. Servs., Inc., 202 F.Supp.2d 536, 540 (S.D.Miss.2002) ("since silence, in the absence of a duty to speak, is not actionable, plaintiffs' claims for misrepresentation by omission are dependent on the existence of a duty of disclosure"). The duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. Smith v. Tower Loan of Miss., Inc., 216 F.R.D. 338, 358 (S.D.Miss.2003) (quoting Chiarella v. U.S., 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980)). A fiduciary relationship may arise where there appears "on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed." Langston v. Bigelow, 820 So.2d 752, 756(¶ 9) (Miss.Ct.App.2002) (quoting Lowery v. Guar. Bank and Trust Co., 592 So.2d 79, 83 (Miss.1991)). Mississippi law is clear that no such relationship exists between a liability insurer and a third-party liability claimant such as Mooneyham. See General Motors Acceptance Corp. v. Baymon, 732 So.2d 262 (Miss. 1999). Thus, no fiduciary or other special relationship existed between Mooneyham and Progressive.
¶ 16. In support of his argument that Progressive owed him a duty of disclosure, Mooneyham relies on Guastella v. Wardell, 198 So.2d 227 (Miss.1967). In Guastella, the supreme court held that "[a] party to a business transaction ... is under a duty to disclose to the other party, before the transaction is consummated, information which will correct previous representations made to the other party which are untrue or misleading." Guastella, 198 So.2d at 230. Mooneyham asserts that Progressive had a duty to explain that the April 22, 2002 offer specifically excluded any payment of medical expenses in order to "correct" Progressive's initial offer to pay what Mooneyham alleges was $500 plus all medical bills forever. However, Mooneyham's reliance on Guastella is misplaced.
¶ 17. In Welsh v. Mounger, 883 So.2d 46, 49(¶ 13) (Miss.2004), the supreme court held that Guastella applies "only where [the defendant] misrepresented the facts at the outset and had a duty of disclosure to correct that affirmative falsehood." Mooneyham does not dispute that Progressive's original offer, made by Malone, was made in good faith with a then present intent to pay Mooneyham the offered settlement for medical bills. Therefore, no misrepresentation occurred at the outset *1228 and thus no duty to correct any affirmative falsehood arose under Guastella.
¶ 18. Based on our review, we find that Mooneyham failed to prove fraud, specifically a misrepresentation, by clear and convincing evidence. Therefore, the trial court's decision to grant a motion for directed verdict in favor of Progressive should be affirmed.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER AND ISHEE, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.
NOTES
[1] Mooneyham and Ralph were married by the time of trial in this matter.
[2] At trial, Mooneyham testified that he does not remember talking to Estes at all before accepting the $500 settlement offer.