# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-02052-SCT

*JULIE MABUS*

*v.*

*ST. JAMES EPISCOPAL CHURCH, EPISCOPAL DIOCESE OF MISSISSIPPI, INC., AND JERRY McBRIDE*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2006 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | FELECIA PERKINS |
| ATTORNEYS FOR APPELLEES: | GLENN GATES TAYLOR |
| | D. JAMES BLACKWOOD, JR. |
| | KAREN L. GUNN |
| | CHRISTY M. SPARKS |
| | ROBERT A. MALOUF |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 04/16/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, C.J., DICKINSON AND KITCHENS, JJ.

## WALLER, CHIEF JUSTICE, FOR THE COURT:

¶1.     This case is on appeal for a second time before this Court. Julie Mabus filed suit in the First Judicial District of Hinds County Circuit Court against St. James Episcopal Church, Protestant Episcopal Church in the Diocese of Mississippi, and Jerry McBride (a former priest at St. James). She asserted seven causes of action against the defendants based upon

McBride's participation in the surreptitious tape recording of a conversation among Julie, her then-husband, Ray Mabus, and McBride. The trial court granted summary judgment in favor of the defendants on all counts, with the exception of the fraudulent-concealment claim against McBride individually. In *Mabus v. St. James Episcopal Church*, 884 So. 2d 747 (2004) (hereinafter *Mabus I*), we affirmed the trial court and remanded the case for disposition of the fraudulent-concealment claim against McBride. *Mabus I*, 884 So. 2d at 765. On remand, the lower court granted summary judgment in favor of McBride on the fraudulent-concealment claim, and denied Julie's motion for relief from judgment, which sought to revive her claim for breach of fiduciary duty. We affirm, but on different grounds from those relied on by the trial court. *See Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 843 (Miss. 2003).

### FACTS AND PROCEDURAL HISTORY

¶2.     The facts of this case are the same as those set forth in *Mabus I*:

The cause of action arises from McBride's participation in the tape recording of his meeting with Ray and Julie on January 7, 1998. At the time of the meeting, Ray and Julie were married, and McBride was the pastor at St. James Episcopal Church in Jackson, Mississippi where the Mabuses attended. Julie was an active, lifelong member of St. James. McBride officiated at the Mabuses' wedding and baptized both of their children. In addition to serving as their pastor, McBride was a close personal friend of both Ray and Julie. Ray invited McBride to be present when he confronted Julie with his knowledge of her purported infidelity several days prior to the meeting, and Ray told McBride that he intended to record the conversation on the advice of his divorce attorney. Julie's sister was also invited to attend the meeting, but she did not attend because her airline flight into Jackson was canceled due to inclement weather.

The meeting took place in the Mabuses' home. The trial court found that "the purpose of the confrontation and surreptitious recording was to obtain evidence for Ray Mabus to use as leverage in attempting to get Julie to agree

2

to a no-fault divorce." Julie did not know that Ray was recording the meeting[1] nor was she aware that the purpose of the meeting was to confront her with her purported infidelity. Ray later testified in a deposition that he told Julie that he "wanted to talk to her about something important with McBride present." Ray also testified that he believed McBride's "participation could possibly help save the marriage." However, by way of affidavit, Ray stated that "this meeting was not in any way a 'counseling session.'"

What is clear from the transcript of the meeting is the fact that Ray presented his wife with three options: save the marriage, no-fault divorce, or "we go to war" which would include an alienation of affection suit against her alleged paramour. The first option was instantly dismissed by Julie, and it was readily discernible that custody of the children would be a major point of disagreement. Julie expressed confusion as to why McBride was present. McBride responded at times that he was there for Ray and at other times for both of them. Julie was combative and used profanity during the course of this confrontation and likewise begged and pleaded for custody of her children. At one point, McBride sent Ray out of the room. With Julie still upset, McBride assured Julie that he was not there to ambush her, that he was there by her side, and that she was not alone. Soon afterwards, McBride left the home. Julie asserts that, after leaving the Mabus household, McBride told several other people of the conversation regarding Julie's alleged infidelity.

Divorce proceedings ensued between the Mabuses. Although the transcript was not introduced as evidence, Ray's expert witness used the transcript in reaching his determination that Ray was the more stable parent and should have custody of the children. Ray was awarded legal custody of the children, with both parties gaining joint physical custody.

*Mabus I*, 884 So. 2d at 751-52 (footnote omitted).

¶3. Julie filed suit against McBride, the church, and the diocese, alleging breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, invasion of privacy, negligent infliction of emotional distress, negligent retention/supervision, and clergy malpractice. The trial court granted summary judgment for defendants on all counts, with

---

[1] Julie did not know beforehand that Ray was recording the meeting. On remand before the trial court and presently on appeal, both parties vehemently dispute whether Julie developed such knowledge during the meeting.

3

the exception of the fraudulent-concealment claim against McBride. This Court affirmed the trial court and remanded the case for disposition of the fraudulent-concealment claim against McBride, individually. *Mabus I*, 884 So. 2d at 765.

¶4. Following *Mabus I*, the parties conducted further discovery on the issue of fraudulent concealment. McBride then filed a motion for summary judgment on July 28, 2006. Days later, on July 31, 2006, Julie filed a motion for relief from the judgment, or in the alternative, motion to dismiss and for other relief. In her motion, Julie requested that the trial court set aside its 2002 grant of summary judgment on her breach-of-fiduciary-duty claim, and enter judgment in her favor. She argued that the trial court's prior ruling was based on false affidavits submitted by Ray and McBride, as well as a fabricated transcript of the meeting.

¶5. On October 9, 2006, the trial court granted summary judgment in favor of McBride. In a separate opinion and order that same day, the trial court denied Julie's motion for relief from judgment. Julie now appeals to this Court raising the following assignments of error: (1) whether the trial court erred in granting summary judgment for McBride, and (2) whether the trial court erred in denying Julie's motion for relief from judgment.

## DISCUSSION

### I. Whether the trial court erred in granting summary judgment for McBride.

¶6. This Court conducts a de novo review of a trial court's decision on a motion for summary judgment. *Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 180 (Miss. 2007) (quoting *Brown v. J. J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 130 (Miss. 2003)). The moving party is granted judgment "'if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith*, 952 So. 2d at 180 (quoting Miss. R. Civ. P. 56(c)). Although summary judgment, in whole or in part, must be granted with great caution, it "is mandated where the respondent has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Smith*, 952 So. 2d at 180 (quoting *Brown*, 444 So. 2d at 363; *Wilbourn v. Stennett*, *Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)).

¶7.    In granting summary judgment for McBride, the trial court found that Julie had essentially "talked herself right out of court." Prior to *Mabus I*, the trial court had denied McBride's motion for summary judgment on the fraudulent-concealment claim. At that time, Julie had asserted in an affidavit that had she known she was being taped, she would have responded differently or refused to participate in the conversation. But on remand from *Mabus I*, Julie gave a deposition and submitted an affidavit in which she stated that she suspected Ray was taping her.[2] Significantly, Julie confirmed that her suspicions arose

---

[2] Julie's April 2006 deposition included the following exchange:

[McBride's Counsel]: Who told you it had been taped?

[Julie]: They told me at a deposition.

[McBride's Counsel]: But you figured it had been before that, though.

[Julie]: Yes.

. . . .

[McBride's Counsel]: At what point during the confrontation did you figure he was taping you?

5

shortly into the meeting. The trial court found that these concessions showed that Julie was not prevented from discovering the tape recording; and therefore, she could not establish one of the necessary elements for a cause of action based on fraudulent concealment.

¶8. Julie claims that the trial court erred in granting summary judgment for McBride, and that it applied an incorrect legal test to reach its conclusion. She submits that the trial court failed to apply the proper elements of fraudulent concealment as set forth in *Mabus I*.

¶9. In *Mabus I*, this Court explained fraudulent concealment as follows:

> . . . [T]he plaintiff must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Furthermore, under Mississippi law, these elements must be

---

[Julie]: I think when he went through the litany of things: You can do this, this, this, and this.

[McBride's Counsel]: When he was giving you the options?

[Julie]: And it was, like, okay.

[McBride's Counsel]: You were kind of sizing things up?

[Julie]: That's when I turned to [McBride], and I said to him –

[McBride's Counsel]: – "What are you doing here?"

[Julie]: – "What are you doing here?" Because I thought he was there in another capacity to help us through a situation with Ray.

[McBride's Counsel]: But at that point you had a suspicion that Ray is taping you.

[Julie]: At some point in time 10 or 15 minutes into it, you know, yes. Yeah.

shown by clear and convincing evidence. . . .[I]n order for there to be liability for nondisclosure, silence must relate to a material fact or matter known to the party and as to which it is his legal duty to communicate to the other contracting party. An affirmative act of concealment is necessary.

*Mabus I*, 884 So. 2d at 762 (citations omitted). The trial court, however, relied on *Phillips v. New England Mutual Life Insurance Co.*, 36 F. Supp. 2d 345, 348 (S.D. Miss. 1998) (quoting *Davidson v. Rogers*, 431 So. 2d 483, 485 (Miss. 1983)) which states three requirements for fraudulent concealment—the plaintiff must show that the defendant (1) took some action, affirmative in nature; (2) that was designed or intended to prevent; and (3) which did prevent the plaintiff's discovery of the facts giving rise to a claim of fraud. *Phillips*, 36 F. Supp. 2d at 348 (quoting *Davidson*, 431 So. 2d at 485).

¶10.    Although *Mabus I* further expounds on the elements of fraudulent concealment, there is nothing inherently wrong or inconsistent with the test used by the trial court. *Mabus I* incorporates the three elements stated in *Phillips* and *Davidson*. Therefore, we find that the standard employed by trial court was not improper per se.[3]

---

[3] Julie contends that the standard derived from *Phillips* and *Davidson* applies only to the fraudulent concealment of a cause of action, rather than a stand alone claim for fraudulent concealment as in this case. These are, in fact, two distinct types of claims. The fraudulent concealment of a cause of action applies to any claim, but is not to be confused with cases, like the one at hand, "where the gist of the action itself is fraud, and the concealment is inherent in the fraud." *See Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 n.2 (5th Cir. 1971) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S. Ct. 582, 90 L. Ed. 743 (1946)). The elements for both types of claims are very similar. *See Windham v. Latco of Miss., Inc.*, 972 So. 2d 608, 614 n.8 (Miss. 2008) (in order to show fraudulent concealment of a cause of action, a party must show some affirmative act or conduct designed to prevent the discovery of a claim, which did prevent the discovery of the claim, and that due diligence was performed by the party to discover it) (quoting *Channel v. Loyacono*, 954 So. 2d 415, 423 (Miss. 2007)). Nevertheless, *Phillips* and *Davidson* involved claims of fraud in which concealment was inherent in the fraud. *See Phillips*, 36 F. Supp. 2d at 348; *Davidson*, 431 So. 2d at 485. Thus, we find their purported standard for

¶11. Turning to the basis of the trial court's decision, we disagree with its finding that no genuine issue of material fact exists regarding Julie's knowledge of the recording. It is true that Julie stated in her deposition that she suspected or figured that the conversation was being recorded. But in her affidavit, she explained further that she quickly dismissed these thoughts because she did not believe that McBride would participate in or condone such actions. Considering the facts in the light most favorable to Julie, it is plausible that she merely suspected, but did not seriously believe or know, that the conversation was being taped.

¶12. Despite our disagreement with the trial court's rationale, we find summary judgment proper for a more fundamental reason—Julie is unable to establish that McBride had a legal duty to disclose any knowledge he had of the recording. In order to be liable for nondisclosure, a party must have had a legal duty to communicate a known material fact. *Mabus I*, 884 So. 2d at 762 (citing *Guastella v. Wardell*, 198 So. 2d 227, 230 (Miss. 1967)). Thus, nondisclosure in itself, even if fraudulent, does not give rise to a legal claim. The party must have concealed something that he or she was legally required to disclose. This Court previously found that no fiduciary relationship existed between Julie and McBride. *Mabus I*, 884 So. 2d at 761. A fiduciary relationship requires "that both parties understood that a special trust and confidence was being reposed." *Id.* at 758 (citing *Lowery v. Guar. Bank & Trust Co.*, 592 So. 2d 79, 84 (Miss. 1991). It is clear, however, that Julie was not dependent upon McBride, nor did she repose any trust or confidence in him. *Mabus I*, 884

_____

fraudulent concealment relevant to this case.

8

So. 2d at 759. Nothing resembling a marital counseling session ever occurred. *Id.* at 761. In the absence of a fiduciary relationship, and with no other legal duty apparent from the record, we find that Julie's claim of fraudulent concealment against McBride must fail.[4]

¶13. For the aforementioned reasons, we affirm the trial court's grant of summary judgment for McBride on the fraudulent-concealment claim.

**II. Whether the trial court erred in denying Julie's motion for relief from judgment.**

¶14. The standard of review for the denial of a motion for relief from judgment is abuse of discretion. *Davis v. Nationwide Recovery Serv.*, 797 So. 2d 929, 930 (Miss. 2001) (citing *Montgomery v. Montgomery*, 759 So. 2d 1238, 1240 (Miss. 2000)). Consideration of a motion based on Mississippi Rule of Civil Procedure 60(b) generally requires that a "'balance . . . be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality.'" *City of Jackson v. Jackson Oaks L.P.*, 860 So. 2d 309, 311-12 (Miss. 2003) (quoting *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)). Rule 60(b) motions should be denied where they are merely an attempt to relitigate the case. *Jackson Oaks L.P.*, 860 So. 2d at 312 (citing *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987)).

¶15. In August 2002, the trial court granted McBride's motion for partial summary judgment on Julie's breach-of-fiduciary-duty claim. This Court affirmed the trial court's decision in *Mabus I*, finding that Julie had failed to prove that a fiduciary relationship had existed between her and McBride. *Mabus I*, 884 So. 2d at 76-61. On remand from *Mabus*

---

[4] Justice Dickinson aptly recognized this quandary in his separate opinion in *Mabus I*. *Mabus I*, 884 So. 2d at 766 (J. Dickinson, concurring in part, dissenting in part).

9

*I*, Julie filed a motion for relief from judgment, or in the alternative, motion to dismiss and for other relief, requesting that the trial court reinstate her breach-of-fiduciary-duty claim. Julie argued that the trial court based its decision on false affidavits submitted by Ray[5] and

---

[5] Julie argued that Ray's 2002 affidavit contradicted his 1998 deposition, which was taken during his and Julie's divorce proceeding. In the affidavit, Ray stated:

This meeting was not in any way "a counseling session." I did not ask [McBride] to be there for the purpose of giving us marital counseling. Neither [McBride] nor I told Julie that [McBride] was present for the purpose of marital counseling.

In Ray's 1998 deposition, the following exchange occurred:

[Julie's Counsel]: Why was [McBride] present?

[Ray]: [McBride] was present because I had gone to him when I learned definitely that Julie was having an affair with Mr. Ely, to seek guidance and counseling. I told him that I wanted to try to save the marriage . . . . .

[Julie's Counsel]: Did [Julie] know [McBride] was going to be there. [sic]

[Ray]: Yes.

. . . .

[Julie's Counsel]: And what did you actually tell [Julie] about that meeting?

[Ray]: I told [Julie] there was something I needed to talk to her about. That I had talked to [McBride] about it. And that [McBride] was going to be there.

. . . .

[Julie's Counsel]: Okay. Is your wife's personality such that she made no particular inquiry to you as to why she was going to be over there talking to you and [McBride]?

[Ray]: No. [Julie] told me – she asked what it was about. I told her it was about the marriage, but I would prefer to do it at the meeting. And I wouldn't give her any more particulars.

10

McBride,[6] and an inaccurate transcript[7] of the taped meeting. The trial court held that even

> . . . .
>
> [Julie's Counsel]: . . . [I]s it your position that [McBride] was there in his capacity as priest for both of you?
>
> [Ray]: Yes.
>
> [Julie's Counsel]: And to offer whatever spiritual guidance either of you would ask of him on that occasion?
>
> [Ray]: Yes.

[6] Julie argued that McBride's 2001 affidavit contradicted his 2000 deposition. In his affidavit, McBride stated:

> My purpose for being present at the Mabus residence on the day in question was simply to be supportive of members of the church during a time of family crisis. If Ray and Julie Mabus ha[d] expressed to me an interest in pursuing marital counseling I would not have become involved in that process.

In McBride's 2000 deposition, the following exchange occurred:

> [Julie's Counsel]: Did [Ray] ever tell you that his purpose of going over there was for anything other than in your capacity as a preacher that had been knowing her for 20 years, or thereabouts, to try to sit down and counsel with a couple to save their marriage?
>
> [McBride]: That was the only reason I was there.
>
> [Julie's Counsel]: Okay. At least as far as you were concerned, that's the only reason –
>
> [McBride]: Of course. I'm speaking for me.
>
> [Julie's Counsel]: Right.
>
> [McBride]: Right. As far as I'm concerned.

[7] Julie asserted that the language which the trial court relied on to determine that she did not know the purpose of the meeting never actually occurred. The transcript revealed the following conversation as Julie first arrived to the meeting:

11

if Julie's allegations were true, request for Rule 60(b) relief was time-barred because she had knowledge of any false or inaccurate statements prior to the trial court's 2002 ruling, but did not seek relief from the judgment until July 2006.

¶16.     Julie now argues that her claim for breach of fiduciary duty should be reinstated, because Ray and McBride perpetrated a fraud to obtain partial summary judgment. She submits that a partial summary judgment is interlocutory and may be modified. She further contends that because McBride remains a party to the action, he would not be prejudiced by having the claim reinstated.

¶17.     We find Julie's arguments to be without merit. The trial court certified its 2002 order as final under Rule 54(b) of the Mississippi Rules of Civil Procedure. Miss. R. Civ. P. 54(b). Additionally, Rule 60(b)(6) provides that a motion for relief from judgment based upon fraud or misrepresentation may not be brought more than six months after the judgment or order is entered. Miss. R. Civ. P. 60(b)(6).

---

Ray Mabus: [McBride] may be late. [Unintelligible]

Julie Mabus: [Unintelligible]  You wanna go?  Is it about me?

Ray Mabus: [Unintelligible]

Julie Mabus: [Unintelligible] What triggered your return[?]

Julie submitted that an audio expert, using advanced technology, determined that she never asked, "Is it about me?"  Her expert transcribed this particular line as Julie asking, "You want to sit down by me?  Do you want me to sit there and get you a chair?  Is that close enough? (There are audible sounds of someone moving furniture around)."  She also contends that the tape indicates she never asked Ray what triggered his "return," but sought clarification as to why he had used a certain "term."

12

¶18.   We therefore find that the trial court did not abuse its discretion in denying Julie's motion for relief from judgment.

## CONCLUSION

¶19.   Because Julie is unable to show that McBride had a legal duty to disclose the recording, we affirm summary judgment in favor of McBride on the fraudulent-concealment claim. We further find that the trial court did not err in denying Julie's motion for relief from judgment.

¶20.   **AFFIRMED.**

**CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.  DICKINSON, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.  KITCHENS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DICKINSON, J. GRAVES, P.J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING:**

¶21.   Today's decision marks the sad end of a sad case. Given the obligations imposed upon us by this Court's previous decision in this case, I am compelled to join today's pronouncement in its entirety. I write separately, however, to express my strong reservations.

¶22.   When this case first visited this Court nearly five years ago, the majority concluded that Julie Mabus had put forth no evidence to suggest that she depended upon Jerry McBride in his role as her priest. *Mabus v. St. James Episcopal Church*, 884 So. 2d 747 (Miss. 2004) (*Mabus I*). With respect, I am convinced that this finding was erroneous.

¶23.   The relationship between priest and parishioner carries depths of trust that cannot be overstated; and viewed in the light most favorable to Ms. Mabus, *Neely v. North Mississippi*

13

***Medical Center, Inc.***, 996 So. 2d 726, 728 (Miss. 2008), the record supplied ample evidence to contradict the Court's 2004 conclusion that "Julie was not dependent upon McBride, nor [did] she repose[ ] any trust or confidence in him . . . ." ***Mabus I***, 884 So. 2d at 759. During their surreptitiously recorded colloquy, McBride repeatedly referred to his longstanding status as Julie's priest to encourage her comfort and trust. *See, e.g.*, ***id.*** at 759-60 ("McBride: . . . [T]his is not an ambush on my part, I'm here because I love you, I didn't want to be here."). Julie's continued presence at the meeting was in and of itself evidence that McBride's overtures persuaded her. Had I been a member of the Court when it addressed this case in 2004, I would have voted to submit to a jury the questions of fact as to whether the priest-penitent relationship was operative at that time and whether it was breached by McBride.

¶24. Similarly, if this case's return to our chambers presented an opportunity to reverse this Court's 2004 decision, I would vote to do so. But of Ms. Mabus's seven original claims against McBride, St. James, and the Diocese of Mississippi, only one survived our 2004 judgment. And although I strongly disagree with the ***Mabus I*** Court's conclusion that McBride, as a matter of law, did not act as Ms. Mabus's priest during the 1998 tape-recorded meeting, I am duty-bound by the law-of-the-case doctrine to apply ***Mabus I*** to the fragment that remains today. Therefore, forced as we are by ***Mabus I*** to view McBride not as a clergyman but rather as we would any other man on the street, I am prevented from finding, with regard to Ms. Mabus's only remaining claim, that McBride acted under an affirmative duty to disclose that this ostensibly confidential conversation was being recorded secretly.

14

¶25. Uncomfortable though I am in this final result, my greater fear is that these two decisions will leave Mississippians reticent to divulge their deepest secrets to men and women of the cloth, for fear that the priest-penitent privilege affords no real protection of confidentiality. I do hold out hope that such will not come to pass; for although this case provides a poor example, the central holding of *Mabus I* is one under which Mississippians can take refuge. At its core, *Mabus I* affirms two important points of law: that a fiduciary relationship can exist between shepherd and sheep, and that the First Amendment does not necessarily preclude court actions for breach of that duty. *Id.* at 760. Neither of these statements provides a bright-line rule, however. Thus, the determination of whether a cause of action has arisen "is ordinarily a question of fact." *Id.* (citing *Lowery v. Guar. Bank & Trust Co.*, 592 So. 2d 79, 85 (Miss. 1991)). In Julie Mabus's case, that fact-intensive question rightly belonged to a jury.

¶26. Therein lies the ultimate paradox of *Mabus I*. Although it identified an important legal principle that should afford the protection of confidentiality to the faithful, this Court denied that protection to the person whose misplaced trust in a clergyman first brought that dilemma to this Court's attention. Because of *Mabus I*, Mississippians should not fear Julie Mabus's legal fate, but the decision securing that peace of mind denied it to the very woman whose name henceforth will be synonymous with that protection.

¶27. I have searched for a way to avoid that irony in this case; but given our earlier determination regarding McBride, I see no other legally viable outcome than the one reached by today's decision. I believe, though, that, generally speaking, our two decisions in this

15

litigation help to secure Mississippians' privacy interests. I fervently hope that the misapplication of that protection ends with Julie Mabus.

**DICKINSON, J., JOINS THIS OPINION IN PART.**