475 So.2d 425 (1985)
SHOGYO INTERNATIONAL CORPORATION
v.
FIRST NATIONAL BANK OF CLARKSDALE, Mississippi.
No. 54857.
Supreme Court of Mississippi.
July 24, 1985.
Rehearing Denied September 18, 1985.
R. Conner McAllister, Jackson, for appellant.
William Cliff Heaton, Fincher G. Bobo, Neblett, Bobo, Chapman & Heaton, Shelby, for appellee.
Before WALKER, P.J., PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Co-Products Unlimited, Inc., a manufacturer, acting through Gus Roessler, its general manager, ordered 100,000 plastic wheel casters in August, 1979, from Shogyo International Corporation, a New York import company. Gene Rubin, sales manager of Shogyo, required Co-Products, as a new customer, to provide Shogyo with a letter of credit from a bank. The First National Bank of Clarksdale, Mississippi, declined to issue a letter of credit but after conversations between Wayne Winter, executive vice-president of the Bank, Roessler and Rubin, the Bank agreed to give a guarantee and did send a letter of guarantee to Shogyo guaranteeing the first shipment of casters to Co-Products.
Shogyo then issued a letter of credit to its foreign suppliers and when the casters were shipped to Co-Products the invoice was supplied to the Bank and the Bank forwarded a cashier's check to Shogyo.
*426 This system was used twice in 1979. Its internal operation consisted of Roessler telling his principals that he needed to order materials and Roessler would then notify the Bank. The principals and the Bank would then arrange credit at the Bank. Winter, on behalf of the Bank, would then write the letter of guaranty to Shogyo.
On February 5, 1980, Co-Products ordered 150,000 wheel casters from Shogyo. The purchase order stated that it was placed under the "usual" terms. To both Rubin, of Shogyo, and Roessler, of Co-Products, this meant a guarantee from the Bank, just as the other transactions had done.
The crux of this case is the letter sent by Wayne Winter from the Bank to Shogyo International on February 19, 1980. This letter said:

Shogyo considered this letter as confirmation of their conversation with the Bank. Winter, of the Bank, testified that the letter was merely to thank Shogyo for extending credit to Co-Products. Winter further testified that this was not a letter of guarantee because at the time this letter was written the Bank was no longer satisfied *427 with its financial dealings with Co-Products, had had difficulty communicating with its principal, and knew that Co-Products was in bad financial condition. Furthermore, at the time the letter was mailed to Shogyo, Co-Products had not made financial arrangements with the Bank.
On March 4, 1980, Shogyo again wrote the Bank, asking Winter to initial his approval of the letter outlining Shogyo's understanding that the Bank was guaranteeing payment for the casters. Winter did not return this letter and testified that it was the Bank's position that it had no duty to Shogyo to guarantee the payment, nor did it have a duty to Shogyo to inform that corporation that the Bank had canceled any credit arrangements between the Bank and Co-Products. In due course, all three shipments of the casters arrived and were not paid for when the invoices were presented to the Bank. Shogyo then filed suit against the Bank for $64,500 in the Circuit Court of Coahoma County. This cause by agreement was transferred to the County Court of Coahoma County. After trial before the county judge, sitting without a jury, the trial court found that the letter of February 19, 1980, was not a letter of credit under the Uniform Commercial Code, Sec. 75-5-101, et seq., and the Mississippi Statute of Frauds, Mississippi Code Annotated § 15-3-1 (1972), prevented the enforcement of the parol contract. Therefore, the suit by Shogyo was dismissed.
The trial court was correct in its finding that the letter of February 19, 1980, was not a letter of credit. Nothing, however, turns on this. Shogyo clearly acted in reliance upon the Bank's letter of February 19, 1980. The representation that Co-Products had made financial arrangements with the Bank for the purchase of the casters, followed by the statement that the Bank understood that the first shipment would arrive in June, made it reasonable for the Bank to assume that Shogyo would proceed with this transaction as it had with the two prior transactions of 1979. The controlling principles of law that require that this case be reversed are to be found in Berkline Corporation v. Bank of Mississippi, 453 So.2d 699 (Miss. 1984). Mr. Winter was clearly an officer of the First National Bank of Clarksdale. His letter of February 19, 1980, clearly states that Co-Products Limited had made financial arrangements with that Bank to cover the purchase of the 150,000 casters. At the time Mr. Winter made this statement it was untrue and Mr. Winter was aware that it was untrue. Mr. Winter could not reasonably assume that Shogyo would not act on the misrepresentation given them by the Bank. From the date of the letter through the delivery of the last of the three shipments of casters, Mr. Winter had to have been aware that Shogyo had an opportunity to cut its losses if given the correct information about the credit standing of Co-Products and did not notify Shogyo of the true situation.
Under these circumstances, the Bank is responsible for Shogyo's $64,500 loss in this business venture. While this is not a case of fraud, it is a case of misrepresentation and Shogyo has made out the elements of negligent misrepresentation on this record. Berkline sets forth the following test in order for a plaintiff to recover in such a case:
(a) A misrepresentation or omission of a fact;
(b) That the representation or omission is material or significant;
(c) That in responding to the credit inquiry the bank officer failed to exercise that degree of diligence and expertise the public is entitled to expect of reasonably competent bank officers;
(d) That it reasonably relied upon the Bank's misrepresentation or omission; and
(e) That it suffered damages as a direct and proximate result of such reasonable reliance.
Berkline, 453 So.2d at 702. All of these elements have been shown by a preponderance of the evidence in this record. Winter's letter of February 19 did not express an opinion. It stated as a fact that Co-Products had made financial arrangements *428 to pay for the casters. This was a fact which was false at the time it was made and exposes the Bank to liability.
Furthermore, the Bank, under these circumstances, was under a duty to disclose to Shogyo, before the transaction was completed, information that would correct the previous representations made by the Bank which were untrue. See Guastella v. Wardell, 198 So.2d 227, 230 (Miss. 1967).
Under these circumstances, the statute of frauds has no application. However, even if the statute of frauds would apply, the doctrine of equitable estoppel would take this case outside of the statute of frauds. See PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205-07 (Miss. 1984).
Analogous to these rules as pointed out by Robertson, J., in Berkline, is the rule of promissory estoppel which we find in Sanders v. Dantzler, 375 So.2d 774, 776 (Miss. 1979).
Our law requires that when a party makes statements or engages in conduct that reasonably induces another party to rely upon those statements or that conduct to his detriment, the first party has a duty to respond.
The judgment of the County Court of Coahoma County is, therefore, reversed and judgment is rendered here for Shogyo International Corporation.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.