IN THE SUPREME COURT OF MISSISSIPPI
NO. 2005-CT-01154-SCT

*COYE A. HOLMAN AND TED HOLMAN*

*v.*

*HOWARD WILSON CHRYSLER JEEP, INC.*

## ON MOTION FOR REHEARING
## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:  06/01/2005
TRIAL JUDGE:  HON. SAMAC S. RICHARDSON
COURT FROM WHICH APPEALED: RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS: MARK W. PREWITT
ATTORNEYS FOR APPELLEE: JEFFREY P. HUBBARD
         SUSAN D. McNAMARA
NATURE OF THE CASE: CIVIL - CONTRACT
DISPOSITION:  REVERSED AND REMANDED - 01/10/2008
MOTION FOR REHEARING FILED: 10/11/2007
MANDATE ISSUED:

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinion is withdrawn and this opinion substituted therefor.

¶2. Coye and Ted Holman filed suit against Howard Wilson Chrysler Jeep, Inc., in the Circuit Court of Rankin County, Mississippi, seeking actual and punitive damages for claims related to their purchase of a 2002 Jeep Grand Cherokee. They made six claims in their original complaint, alleging Howard Wilson: negligently failed to notify them the vehicle

they purchased had previously been damaged in an automobile accident; concealed or misrepresented the fact the vehicle had sustained damage; and committed fraud. Howard Wilson answered and, after discovery, filed a motion for summary judgment. At the hearing on the motion for summary judgment, the Holmans expressed their desire to amend their complaint to add a claim that Howard Wilson violated Mississippi's Consumer Protection Act when selling them the Jeep. Miss. Code Ann. §§ 75-24-1 through 75-24-175 (Rev. 2000). The circuit court considered the merits of this proposed amendment when hearing the motion for summary judgment, and decided that the additional claim would not change its ruling even if the amendment were granted. The circuit court then allowed the Holmans to amend their complaint, and shortly thereafter entered its order granting summary judgment in favor of Howard Wilson on all claims.[1]

3.    The Court of Appeals affirmed the judgment of the circuit court in a 9-0 opinion. *Holman v. Howard Wilson Chrysler Jeep, Inc.*, ___ So. 2d ___, 2005-CA-01154-COA (Miss. Ct. App. November 14, 2006). The Holmans filed a petition for writ of certiorari, which this court granted. We find genuine issues of material fact exist concerning whether Howard Wilson was under a duty to disclose the repaired damage to the Holmans' vehicle prior to purchase, whether the language of the purchase contract is sufficient to place the

---

[1]In their complaint, the Holmans also made claims for breach of express or implied warranties and intentional infliction of emotional distress. The merits of these claims were not addressed at the hearing or in the motion for summary judgment, yet the circuit court granted summary judgment and dismissed the entire case. These claims were not raised on appeal and have, therefore, been waived. *See, e.g., Vail v. Jackson*, 41 So. 2d 357 (Miss. 1949). The parties have participated in the attorney general's dispute resolution program as required by law. Miss. Code Ann. § 75-24-15(2) (Rev. 2000).

Holmans on notice of the damage to the vehicle from the prior accident, and whether Howard Wilson violated the Consumer Protection Act when selling the Jeep to the Holmans. Therefore, we reverse the judgment of the Court of Appeals which affirmed the judgment of the circuit court, and remand this matter for further proceedings.

**FACTS**

¶4.     The Holmans purchased a 2002 Jeep Grand Cherokee from Howard Wilson on July 30, 2002.  The purchase price of the Holmans' vehicle was listed on the purchase contract as $33,685.[2]  The Jeep was a demonstrator vehicle and had been driven 8,821 miles when purchased.  Within the purchase contract was a clause which states, in full:

> 4.     The Vehicle may have suffered damages and may have had repairs performed on it during prior ownership or usage, during transit or while in the control or possession of Howard Wilson.  It is acknowledged that the Vehicle has been inspected in accordance with the law, and that it has been test driven and fully inspected by offeror(s) and all others requested or desired by offeror(s) to do so.  The Vehicle is fully acceptable to offeror(s) in its present condition.  Howard Wilson has no obligation to furnish any loaner car to offeror(s) or to provide any other substituted transportation to offeror(s) for any reason.

¶5.     On October 2, 2003, the Holmans' insurance agent informed them that the Jeep was involved in an automobile accident prior to their purchase of it.[3]  The Holmans contacted

---

[2]There is some discrepancy as to the purchase price of the car.  The only executed copy of the purchase contract in the record lists this amount, however, there is what appears to be a draft contract listing the vehicle price as $31,299.  This discrepancy is explained by an exhibit in the record. The DaimlerChrysler Motors vehicle invoice in the record identifies $33,685 as the Manufacturer's Suggested Retail Price, and $31,299 as the total price for the vehicle beginning with the Factory Wholesale Price and adding the options included with the vehicle such as leather seats, a trailer tow package, and chrome aluminum wheels.

[3]The record reflects the accident occurred March 12, 2002, when the vehicle had approximately 8,745 miles on its odometer.

Howard Wilson and confirmed that the vehicle had been in a wreck and was repaired prior to their purchase. The repair bill indicated that several automotive parts were replaced or repaired, including the condenser, deflector, cross-members and brackets, freon and coolant, and the front bumper. The bill for the repairs totaled $2,190.38.

## STANDARD OF REVIEW

¶6. We apply a de novo standard of review to a trial court's grant of summary judgment. *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 398 (Miss. 2006). "The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Howard v. City of Biloxi*, 943 So. 2d 751, 754 (Miss. Ct. App. 2006) (citing *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001)). If any triable issues of material fact exist, this Court will reverse the trial court's decision to grant summary judgment. *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006).

## DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO THE HOLMANS' CLAIMS OF NEGLIGENCE, MISREPRESENTATION AND FRAUD.

¶7. Howard Wilson made three arguments in its motion for summary judgment: (1) It owed the Holmans no duty to disclose the damage to them due to Regulation One of the Mississippi Motor Vehicle Commission; (2) it had, in fact, disclosed the possibility of damage to them within the terms of the purchase contract; and (3) the Holmans suffered no damages due to the failure to disclose. It reiterates these arguments on appeal. The Holmans

4

argue that the Consumer Protection Act and Regulation One of the Mississippi Motor Vehicle Commission are in direct conflict, and the regulation must give way. Miss. Code Ann. §§ 75-24-1 through 75-24-175 (Rev. 2000); 50-014 Miss. Code R. § 003-2 (2005).[4] They claim a genuine issue of material fact remains to be tried: Whether Howard Wilson sold the Jeep demonstrator vehicle to them as new.

¶8.     The Court of Appeals agreed Regulation One "did not require [Howard Wilson] to disclose any damage." *Holman*, ___ So. 2d at ___, 2005-CA-01154-COA at ¶ 7. It also concluded that the disclosure recited above "fulfilled [Howard Wilson's] duty [to disclose] had there been one." *Id.* at ¶ 12. Finally, the Court of Appeals found the Holmans "failed to show any connection with the prior damage to the damages they allegedly suffered." *Id.*

¶9.     The duty to disclose is based upon a theory of fraud that recognizes that the failure of a party to a business transaction to speak may amount to the suppression of a material fact which should have been disclosed and is, in effect, fraud. *Welsh v. Mounger*, 883 So. 2d 46, 49 (Miss. 2004) (discussing *Guastella v. Wardell*, 198 So. 2d 227 (Miss. 1967)). According to the Restatement (2d) of Torts:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated . . .
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and . . .
>
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

---

[4]This regulation also can be accessed at the Commission's internet website: www.mmvc.state.ms.us/mmvc/MotorVeh.nsf/webpages/regulations_one?OpenDocument

5

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977). *See also* **Welsh**, 883 So. 2d at 50 (discussing **Guastella**, 198 So. 2d 227, and Restatement (Second) of Torts § 551).

¶10.    Howard Wilson indicated that its policy was to disclose whether a vehicle had been stolen, had flood damage, or had wreck damage. The Holmans state in their affidavit that they intended to buy a new vehicle when they purchased the Jeep and that they expressed this intention to the salesperson at Howard Wilson. Giving the Holmans the benefit of the doubt and all favorable inferences, their affidavit reflects that the salesperson told them the Jeep was new, as indicated in the title and sales documents. There is enough evidence in the record to find a genuine issue of material fact exists whether Howard Wilson owed the Holmans a duty to disclose the damage prior to the consummation of the sale of the Jeep.

¶11.    Howard Wilson argues the language within the purchase contract met its duty to disclose: "The Vehicle <u>may have suffered damages and may have had repairs performed on it</u> during prior ownership or usage, during transit or while in the control or possession of Howard Wilson." (Emphasis added). The Holmans bear the burden at trial of proving this language did not put them on notice of the damage to the vehicle done in the automobile accident and the further burden of demonstrating the knowledge of the damage would be material to their purchase of the automobile. We find the adequacy of this notice a question for the jury. *See* **Hobbs Automotive, Inc. v. Dorsey**, 914 So. 2d 148, 154 (Miss. 2005); **Lane v. Oustalet**, 873 So. 2d 92, 95-98 (Miss. 2004). *See generally* **Davidson v. Rogers**, 431 So.

6

2d 483 (Miss. 1983); *Averitt v. State*, 246 Miss. 49, 63, 149 So. 2d 320 (1963) (an affirmative defense is a question of fact to be submitted to the jury).

¶12. Howard Wilson also argues it was under no duty to disclose the vehicle's prior damage to the Holmans at the time of purchase, due to Mississippi Motor Vehicle Commission Regulation One. The regulation reads:

> On any vehicle, corrected damage exceeding six percent (6%) of the manufacturer's suggested retail price, as measured by retail repair costs, must be disclosed in writing prior to dealer transfers and consumer deliveries. Damage to glass, tires and bumpers and any damaged components or options which can be replaced by identical components are excluded from the six percent (6%) regulation when replaced by identical manufacturer's original equipment.
>
> > This regulation does not waive or alter any requirements or obligations which may be created by other Federal or State laws and regulations.

50-014 Miss. Code R. § 003-2 (2005). The retail repair costs associated with fixing the Holmans' car after the accident exceeded the six-percent retail repair costs discussed in the regulation.[5] By its own terms, the regulation required Howard Wilson to disclose this damage to the Holmans in writing, unless some of the costs were excluded from the calculation. The exception within the regulation simply removes the requirement imposed by the regulation that dealers and customers are to be notified in writing of corrected damage repairs performed on a particular vehicle. Nothing in the regulation indicates that Howard Wilson is relieved from its potential duty to disclose as examined above in *Welsh*.

---

[5]Six percent of $33,685 is $2,021.10. The retail repair costs listed in the invoice totaled $2,190.38.

¶13. Howard Wilson argues these repairs are excluded from the calculation as they were "corrected damage" to "damaged components" which were replaced by "identical components." As noted above, the exception in the regulation merely removes the requirement that a purchaser be notified in writing of corrected damage. It does not relieve Howard Wilson of any other requirement under Mississippi law. Further, the regulation offers little guidance as to what constitutes a "component" of a vehicle. It specifically identifies glass, tires and bumpers as qualifying under its disclosure exemption, if replaced. The Motor Vehicle Commission Law offers only indirect guidance. *Cf.* Miss. Code Ann. § 63-17-55 (Rev. 2000) ("'Specialty vehicle' means a motor vehicle manufactured by a second stage manufacturer by purchasing motor vehicle components, e.g. frame and drive train. . . .").

¶14. Howard Wilson identifies the purpose of Regulation One as protecting automobile dealers from being forced to disclose minor damage to vehicles "sustained in transit." The Mississippi Automobile Dealers Association, as amici, similarly state this purpose: "The vast movement and management of a fleet of automobiles in the delivery, sale and marketing to the public dictates there will be instances of damage to vehicles in the process." The Motor Vehicle Commission likewise offers this as the purpose of the regulation in its amicus brief. "Automobiles often sustain minor damage in transit from the manufacturer to the dealer. Often times this damage is as simple as a cracked windshield or a scratch in the paint. As a result, Regulation One was enacted to protect both dealers and consumers." We see nothing in our case law or statutes that disagrees.

¶15. Assuming this is the purpose of Regulation One, we find the damage done to the Holmans' Jeep, which was corrected by repairs performed by Howard Wilson, falls outside the purpose of the regulation. This vehicle was involved in an automobile accident, not damaged in transit. The regulation appears to cover new vehicles. It was illegal for the Holmans' demonstrator vehicle to be represented and sold as a new car under the Mississippi Motor Vehicle Commission Act. Miss. Code Ann. § 63-17-73(1)(b)(2) (Rev. 2004). The very purpose of the act which gives the Commission the power to promulgate regulations is to "prevent frauds, unfair practices . . . impositions and other abuses upon the citizens of the State of Mississippi." Miss. Code Ann. § 63-17-53 (Rev. 2004). Since the purpose of the regulation and the Mississippi Motor Vehicle Commission Act would not be served by an interpretation of the regulation which allowed a demonstrator vehicle involved in a documented automobile accident to be sold as new after the accident damage is repaired, we find Regulation One offers no relief to Howard Wilson. The circuit court erred in relying upon this regulation to grant summary judgment for Howard Wilson; and therefore, its judgment is reversed.

**II.     WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO THE HOLMANS' CLAIMS UNDER THE CONSUMER PROTECTION ACT.**

¶16. The Holmans amended their complaint with the court's permission to allege a violation of the Consumer Protection Act prior to the court granting summary judgment in favor of Howard Wilson. The circuit court concluded that the addition of this claim would not affect its judgment. A discussion of the effect the summary judgment had on the

Holmans' claim under the Consumer Protection Act does not appear in the Court of Appeals opinion, yet the Holmans pursued this claim in their briefs and petition for writ of certiorari. The act allows the Holmans to pursue this claim on their own behalf, so we address it below. Miss. Code Ann. § 75-24-15(1) (Rev. 2000).

¶17.    At the hearing, the Holmans argued that the Consumer Protection Act permitted them to recover damages because Howard Wilson sold them a car it represented as "new" when it was, in fact, "used" or "reconditioned." *See* Miss. Code Ann. § 75-24-5(2)(f) (Rev. 2000). Howard Wilson denied it sold them the demonstrator car as a new car. These arguments, on their face, suggest a genuine issue of material fact exists concerning whether Howard Wilson sold the Holmans the demonstrator Jeep as a new vehicle. We find factual support for the Holmans' argument in the record. Therefore, summary judgment is inappropriate.

¶18.    In responding to the motion for summary judgment, the Holmans offered their affidavit which provided, in pertinent part:

> After looking around for a while we decided upon a new 2002 Jeep Grand Cherokee.
> We talked to the sales representative who advised that the Jeep was new as reflected on the title and other applicable sales documents.
> When the sales representative stated the Jeep was "new", it carried with it the generally accepted connotation that it had never sustained any damages. Based upon this and other representations of good quality, we decided to, and did, purchase the vehicle on July 31, 2002.

As noted above, the Manufacturer's Suggested Retail Price on the manufacturer's vehicle invoice matched the price of the vehicle listed on the purchase contract the Holmans signed. On the face of the Howard Wilson purchase contract there is one area where one of three boxes can be marked to identify the vehicle being sold as "new vehicle," "demo," or "used

10

vehicle." The area immediately adjacent to the "new vehicle" box was marked on the Holmans' purchase contract. These facts stand in opposition to Howard Wilson's claim it did not sell the Holmans the demonstrator Jeep as new. Since there exists a genuine issue of material fact as to whether Howard Wilson sold the demonstrator Jeep to the Holmans as a new car, the circuit court erred in granting summary judgment to Howard Wilson. Its judgment is therefore reversed, and this matter remanded for further proceedings.

¶19. We are urged by the Motor Vehicle Commission and the Mississippi Automobile Dealers Association to find that the Consumer Protection Act and Regulation One do not conflict, as alleged by the Holmans. We agree that the Consumer Protection Act does not conflict with Regulation One. The language of Regulation One specifically states that it does not waive or alter any requirements or obligations created by state law. The purpose of both the Mississippi Motor Vehicle Commission Act and the Consumer Protection Act is to protect the citizens of Mississippi from deceptive and unfair trade practices. Miss. Code Ann. §§ 63-17-53 (Rev. 2004), 75-24-5 (Rev. 2002). Both the Motor Vehicle Commission Act and the Consumer Protection Act prohibit the sale of a used or reconditioned car as a new car. Miss. Code Ann. §§ 63-17-73(1)(b)(2) (Rev. 2004), 75-24-5(2)(f) (Rev. 2002). While the regulation identifies "any Vehicle" within its coverage, we have noted above that the purpose of the regulation is to cover corrected damage done to new vehicles while "in transit." Under the circumstances, we perceive no conflict between the regulation and the Consumer Protection Act.

## CONCLUSION

¶20. After reviewing the trial court's grant of summary judgment, we find that there exist genuine issues of material fact in this case that should be presented to a jury. Mississippi law allows recovery for damages by fraud as well as for violations of the Consumer Protection Act. Therefore, we reverse the judgments of the Court of Appeals and of the circuit court and remand this matter to the trial court for further proceedings consistent with this opinion.

¶21. **REVERSED AND REMANDED.**

**SMITH, C.J., DIAZ, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING.**