# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01797-SCT

*GREEN REALTY MANAGEMENT CORPORATION*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/2007 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS HENRY FREELAND, IV |
| | JOYCE FREELAND |
| ATTORNEYS FOR APPELLEE: | JAMES T. METZ |
| | JOSHUA D. FREEMAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 03/12/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     This is an eminent domain case in which the trial court granted summary judgment for the defendant Mississippi Transportation Commission based on the plaintiff's failure to prove fraudulent or negligent misrepresentation.  Finding error in that decision, we reverse the judgment and remand for further proceedings.

## **FACTS**

¶2.    As part of a road-widening project near Grenada, the Mississippi Transportation Commission (MTC) purchased two tracts of undeveloped land from Green Realty Management Corporation.  In 2004, after the MTC had begun the road-widening project, Green Realty became aware that the Commission intended to replace an existing culvert with a new, larger, box culvert. Prior to this discovery, Green Realty had no knowledge of these plans, as MTC had not disclosed them during purchase negotiations.  Fearing that the box culvert would increase water flow from nearby Howard Creek onto Green Realty's remaining property, thereby endangering several buildings on its property, Green Realty undertook extensive measures, including the construction of a drainage ditch sufficient to carry and control an anticipated increase in diverted water.  Green Realty subsequently filed suit and sought an injunction, alleging that the significant diversion of surface water onto the remaining Green Realty property constituted a taking without just compensation in violation of Article 3, Section 17, of the Mississippi Constitution.  On September 6, 2006, the MTC moved for summary judgment, contending that releases contained in the warranty deeds absolved the Commission of liability.

¶3.    On September 6, 2007, the Grenada County Circuit Court granted the Commission's motion.  The trial court held that the specifications showing alterations to the water flow had been on file in Jackson and Batesville and subject to inspection by any party, and, consequently, that Green Realty had failed to demonstrate any misrepresentation. Green Realty appeals from that decision.

## ISSUES

¶4.    Green Realty raises five separate issues on appeal:

2

(1) Did the circuit court err in granting summary judgment to the MTC since genuine issues of material fact exist concerning whether the MTC's agents (a) provided a plat to John Green of Green Realty which misrepresented the nature and foreseeable damages of the road project in question and (b) omitted, suppressed or failed to disclose material facts that resulted in a fraud in the purchase transaction?

(2) Did the standard forms for "fair market value" offers as completed and used by the MTC in this situation also contain misrepresentations concerning the nature and foreseeable damages of the road project in question?

(3) Did the circuit court err in basing its grant of summary judgment on release provisions in the warranty deeds used by the MTC, since any negligent or intentional misrepresentations by the MTC in obtaining those releases would render them void?

(4) Did the circuit court err in applying *King v. Mississippi Transportation Commission*, 609 So. 2d 1251 (Miss. 1991), since (a) *King* dealt with a variant of res judicata that is inapplicable here; and (b) it was undisputed in *King* that the construction was completed as shown on all the MTC plans available to the property owners?

(5) Did the circuit court, which noted that "there were no facts in the record" concerning negligent or intentional misrepresentation by the MTC's agents, despite an affidavit to the contrary supplied by the non-moving party, err in applying the standard for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure?

## ANALYSIS

¶5.　　We review *de novo* a trial court's grant of summary judgment. *Callicutt v. Prof'l Servs. of Potts Camp, Inc.*, 974 So. 2d 216, 219 (Miss. 2007).

¶6.　　In granting summary judgment for the Commission, the trial court reasoned that Green Realty had a duty to investigate the details of the proposed project and concluded that Green Realty had not fulfilled that duty because the plans had been filed with the Mississippi Department of Transportation and were thus available for inspection. However, whether the

3

drawings were on file is immaterial if the agency withheld material facts in its acquisition of the land. We have long held that where fraudulent misrepresentation is shown, the plaintiff is under no duty to seek out public records. *Gustella v. Wardell*, 198 So. 2d 227, 230-31 (Miss. 1967) ("[F]raud may be predicated on false representations or concealments, although the truth could have been ascertained by an examination of public records.") (citing *Parham v. Randolph*, 5 Miss. 435, 4 How. 435 (1840)); 37 Am. Jur. 2d *Fraud and Deceit* § 258 (2001) ("[T]he fact that a victim has constructive notice of the truth from public records is not a defense to fraud."); *id.* at § 259 cmt. b (stating that a plaintiff is justified in relying on a fraudulent misrepresentation of fact "even though the fact that is fraudulently represented is required to be recorded and is in fact recorded.").

¶7.     This rule comports with our broader jurisprudence regarding a party's duty to disclose. "Our law requires that when a party makes statements or engages in conduct that reasonably induces another party to rely upon those statements or that conduct to his detriment, the first party has a duty to respond." *Shogyo Int'l Corp. v. First Nat'l Bank*, 475 So. 2d 425, 428 (Miss. 1985). Additionally, we have held that "[t]he duty to disclose is based upon a theory of fraud that recognizes that the failure of a party to a business transaction to speak may amount to suppression of a material fact which should have been disclosed and is, in effect, fraud." *Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564, 568 (Miss. 2008) (citing *Welsh v. Mounger*, 883 So. 2d 46, 49 (Miss. 2004)). *See also* Restatement (Second) of Torts § 551(2)(b) (1977) ("One party to a business transaction is under a duty to exercise reasonable care to disclose . . . matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading . . . .").

4

¶8.     The MTC also argues that it cannot be liable for damage to Green Realty's adjacent property because the deeds unambiguously released the MTC from incidental damages. Generally, each party to a written contract is bound by the instrument he or she signs. *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (Miss. 2003). However, agreements reached by misrepresentations or illegal concealment of facts are not enforceable. *Id.* (citations omitted). Moreover, it is a question of fact for the jury whether a release is void due to "an absence of good faith and a full understanding of legal rights, misrepresentation of the nature and effect of the document or lack of adequate consideration." *Garner v. Hickman*, 733 So. 2d 191, 196 (Miss. 1999) (citing *Willis v. Marlar*, 458 So. 2d 722, 724 (Miss. 1984)).

¶9.     Based upon the affidavit and testimony of Green, corroborated by the separate Fair Market Value Offers to Green Realty, such a question of fact for the jury exists in this case. While negotiating the sale, the MTC made written offers to Green Realty estimating the fair market value of the property to be conveyed. However, the offers did not mention the probability of flooding of Green Realty's remaining lands or that Green Realty would be compensated for what could likely amount to a secondary taking by the government agency. In addition, the MTC provided Green Realty a map showing the proposed alteration, yet this map did not include the agency's planned modifications to the culvert or the diversion of water. Green contends that the map misleadingly indicated that the existing culvert would remain in place.

¶10.    In his affidavit, Green averred that

5

[t]here was no indication in the offers . . . or the plat . . . or the deeds, that MTC intended to replace the existing 48 inch culvert so as to divert the flow of Howard Creek through a new 32 by 6 foot box culvert at station 26 plus 269 and onto what remained of the Green Realty and West Grenada Industrial properties after the taking, nor was I, GRM, or WGIP given either actual or constructive notice by MDOT/MTC that the state agency had such intentions.

Green also averred in his affidavit that

since the offers said nothing was to be paid for damages to the buildings not on the property conveyed and nothing was being paid for the land not described in the deeds, it was my understanding that neither the buildings nor the undescribed land were to be affected by the conveyances of tracts N and H, and that I would have no reason to anticipate any effect to be caused by the actions of the MTC on the lands not described in the deeds to the state entities.

¶11.    Thereafter, however, Green learned that "[t]he new design of the bridge . . . will act to divert large volumes of water into the middle of Green Realty's property remaining after the conveyances . . . ."  According to the calculations provided by MTC/MDOT, Green testified that water flow would be increased "seven hundred and thirty-three percent."

¶12.    If the state agency knew it would divert water flow, which would cause damage to property neither paid for nor taken, and remained silent as to this fact, the agency suppressed material facts.  Given that scenario, a material misrepresentation by silence was visited upon Green.

¶13.    The separate, written Fair Market Value Offers to Green Realty corroborate Green's testimony.  The language used by the MTC provided "[i]t is necessary that the [MTC] acquire from you *certain property necessary for the construction of this project*.  The identification of the real property . . . being acquired [is] indicated on the attached [warranty deeds]."  (emphasis added).  The property now at issue was not identified.  The offers provide that the "Total Fair Market Value Offer" is a function of (1) land value, (2)

6

improvements, and (3) damages. No consideration was offered for (2) and (3). The offer by the MTC reflects that the only consideration was for land value.

¶14. The record contains ample evidence to support Green Realty's assertion that the Commission failed to disclose that its project would cause flooding to Green Realty's adjacent property. Therefore, questions of material fact exist regarding the circumstances surrounding the MTC's procurement of the release, and its effect, if any, on Green Realty's claims. *See* Miss. R. Civ. P. 56(c) (requiring genuine issues of material fact to be determined by a jury).

## CONCLUSION

¶15. The existence of publicly-recorded documents does not absolve a party of its duty to disclose when silence will result in negligent or fraudulent misrepresentation. Green Realty presented evidence sufficient to create a genuine issue of material fact in this case, and the trial court erred in holding to the contrary. Therefore, we reverse the circuit court's grant of summary judgment and remand this case for trial.

¶16. **REVERSED AND REMANDED.**

**CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**PIERCE, JUSTICE, CONCURRING IN RESULT ONLY:**

¶17. I concur in result with the majority's decision to reverse the trial court's grant of summary judgment in favor of the Mississippi Transportation Commission and remand the case for a trial on the merits. Green's affidavit provides genuine issues of material fact to be

7

determined by a jury. I write separately because I do not agree with the majority's conclusory statements contained in its opinion on issues which are to be tried by the jury.

¶18. Without reiterating the contents of Green's affidavit, as quoted in the majority opinion, I believe that the affidavit was not properly weighed by the trial court. The affidavit on its face raises genuine issues of material fact to be determined by a jury on Green's misrepresentation claims. For this reason, I concur in result only.

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶19. I believe that Green Realty failed to show any fraud or misrepresentation and is thus bound by the deeds and releases that were signed.

¶20. John Green's claimed misrepresentation was that MTC failed to tell him the existing culvert would be replaced with a box culvert. The uncontested facts are that the map presented to Green during negotiations showed the dimensions of land taken and where the road and culvert were located. The index to the map shows the proposed culvert to be a box culvert. The existence of a planned box culvert is not a disputed fact. Detailed construction plans were available not only in Jackson, but also in Batesville, a short drive north of Grenada, where the District Office is located.

¶21. Green is a sophisticated businessman who, in his own words, has "been engaged in the heavy construction business as an owner and manager of a heavy construction company most of [his] adult life, during which [he] bid on and supervised the construction of various projects involving highways, box culverts, levees, dams, land improvements, and large drainage projects . . . ." Green is also an attorney.

8

¶22. The trial judge found as undisputed fact that the plans and specifications for the project, which included the new box culvert, were open for inspection by Green Realty prior to the purchase negotiations, that the specifications were not altered after the conveyance, that the construction was performed according to specifications, and that there was no proof of damages.[1] According to the trial judge, "the fact remains that Green with the exercise of due diligence had information available to it that would have made this problem, if it is a problem, forseeable [sic]."

¶23. A person must abide by the consequences of his contracts and actions in the absence of some misrepresentation or illegal concealment of facts. *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (Miss. 2003) (citations omitted). *See also Warner v. Warner,* 175 Miss. 476, 479 (1936) (evidence insufficient to support finding of any misrepresentation, concealment, or fraud which would invalidate previous settlement between the parties). The release language in the deeds executed by Green Realty is clear and should be enforced. *See Miss. Transp. Comm'n v. Ronald Adams Constr., Inc.*, 753 So. 2d 1077, 1087 (Miss. 2000) (citing *Griffin v. Tall Timbers Dev., Inc.*, 681 So. 2d 546, 551 (Miss. 1996)).

¶24. Green's belief that flooding will occur where there is no proof of flooding or damages is not sufficient to create a genuine issue of fact for trial. *See Coleman Powermate, Inc. v. Rheem Mfg. Co.*, 880 So. 2d 329, 332 (Miss. 2004) (citing *Richmond v. Benchmark Constr.*

---

[1] The affidavit of Warren Bailey, hydraulic engineer with the Bridge Division of the Mississippi Department of Transportation, confirms that there were no plan changes after February 1, 2003, to the size of the new culvert, to the length of the new bridge, or to the project plans.

***Corp*.**, 692 So. 2d 60, 61 (Miss. 1997)) (party opposing motion for summary judgment must set forth specific facts showing that there are indeed genuine issues for trial).

¶25.    Therefore, I would affirm the trial court's grant of summary judgment.