# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 31, 2022

Lyle W. Cayce
Clerk

No. 20-60991

———

Kimberly Henley, *on behalf of herself and all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

Biloxi H.M.A., L.L.C., *a Mississippi Limited Liability Company, doing business as* Merit Health Biloxi,

*Defendant—Appellee*.

———

Appeal from the United States District Court
for the Southern District of Mississippi
Case No. 1:19-CV-544

———

Before King, Dennis, and Ho,[1] *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

This is an appeal from a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. Plaintiff-appellant, Kimberly

---

[1] Judge Ho concurs in Sections I and II. He would certify the question addressed in Section III to the Mississippi Supreme Court for consideration. *See, e.g., JCB, Inc. v. The Horsburgh & Scott Co.*, 941 F.3d 144, 145 (5th Cir. 2019).

No. 20-60991

Henly ("Henly"[2]), sought a declaratory judgment that defendant-appellee Biloxi H.M.A., L.L.C., doing business as Merit Health Biloxi ("Merit Health"), a hospital, has a duty to disclose that it charges a "facility fee," also referred to as a "surcharge," to all emergency room patients who receive care at its facility. The district court, making an *Erie* guess informed by the Mississippi Supreme Court's references to, and partial application of, the Restatement (Second) of Torts § 551, determined that Merit Health did not have a duty to disclose because the surcharge was not a "fact basic to the transaction," *see* § 551(2)(e) and comment *j.*, and it therefore granted the motion to dismiss. For the following reasons, we REVERSE and REMAND for further proceedings.

## I.

### A.

Henly's complaint included the following factual allegations: Merit Health charges every emergency room patient that visits one of its facilities in Mississippi a surcharge set at one of five levels. For example, according to the complaint, the 2019 surcharge levels at Merit Health's Biloxi location were: (1) Basic—$589.32; (2) Limited—$1,323.39; (3) Intermediate—$1,840.01; (4) Extensive—$2,377.89; and (5) Major—$3,567.89. These surcharges are not based on the individual services or treatments that a patient receives; rather, Merit Health includes a surcharge in the bill of every patient that is seen at the emergency room of its facility, in addition to the line-item charges for specific services provided. Merit Health does not inform patients prior to treatment, either verbally or through signage, of the existence or amounts of the surcharges. These facts are alleged in the

---

[2] The official case caption misspells the plaintiff's name as "Henley," while the complaint uses the correct spelling "Henly." In this opinion, we follow the latter spelling.

No. 20-60991

complaint and therefore are controlling at this motion to dismiss stage of the proceedings.

Henly sought emergency care at Merit Health's Biloxi location on May 19, 2018. She alleges she received no notice or warning, either verbally or through signage, regarding surcharges. She was subsequently billed a gross amount (before discounts) of $17,752.47, which included a $2,201.75 surcharge. Merit Health then applied a 65% self-pay discount to Henly's bill, reducing the total to $6,213.36, including a discounted surcharge of $770.61. The surcharge appeared on the itemized billing statement as "ER DEPT EXTENSIV," but the billing statement did not identify the charge as a surcharge or explain that the charge was a surcharge added on top of line-item charges for specific treatments.[3] According to the complaint, Henly was "shocked" when she found out she had been charged a surcharge on top of the amounts billed for specific treatments and services she had been provided. She avers she would have sought treatment elsewhere if she had been informed about the surcharge prior to receiving treatment. At the time the complaint was filed, Henly had paid more than $1,500 of her bill, but continued to receive statements from Merit Health for the outstanding balance.

According to the complaint, patients like Henly are not aware that the surcharge will be added to their bills and that Merit Health knows that patients are unaware of the surcharge. Merit Health "represent[s] [itself] as a caring community-based organization," and "[u]nlike a normal arms-length transaction between a buyer and a seller, a patient seeking medical services" at Merit Health "places a great degree of trust and confidence on

---

[3] We note that the surcharge constituted nearly 12.5% of the total billed amount. Put another way, the addition of the surcharge increased the amount billed by 14%.

the good intention of the hospital to treat him or her fairly and with compassion." Henly avers that, if known prior to treatment, the existence of the surcharge would be a substantial factor in a patient's decision about where to receive treatment.

## B.

Henly brought a putative class action lawsuit against Merit Health pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment that the hospital had a duty under Mississippi state law to disclose the surcharge to patients prior to treatment. However, the district court did not rule on the class action certification and the parties have not briefed it on appeal.

Merit Health moved to dismiss under Rule 12(b)(6) for failure to state a claim. The district court granted the motion and dismissed Henly's complaint with prejudice, holding that the complaint did not sufficiently allege that the surcharge was a "fact basic to the transaction" as per Restatement (Second) of Torts § 551(2)(e) and comment *j.* that would trigger a duty to disclose under Mississippi law. Henly appealed.

## II.

We review a dismissal pursuant to a Rule 12(b)(6) motion for failure to state a claim *de novo*, accepting all well-pleaded factual allegations as true. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).

No. 20-60991

In diversity cases, "federal courts must apply state substantive law." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (citation omitted). "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." *Id.* "We consider Mississippi Supreme Court cases that, while not deciding the issue, provide guidance as to how the Mississippi Supreme Court would decide the question before us." *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 244 (5th Cir. 2012) (quoting *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011)) (cleaned up).

## III.

According to the Mississippi Supreme Court, "[i]n order to be liable for nondisclosure, a party must have had a legal duty to communicate a known material fact." *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 265 (Miss. 2009). "Thus, nondisclosure in itself, even if fraudulent, does not give rise to a legal claim. The party must have concealed something that he or she was legally required to disclose." *Id.*

The Mississippi Supreme Court has "long recognized the principle that a party is liable for its silence where its silence 'relate[s] to material fact or matter known to the party and . . . it is [the party's] legal duty to communicate to the other contracting party.'" *Daniels v. Crocker*, 235 So. 3d 1, 14 (Miss. 2017) (quoting *Guastella v. Wardell*, 198 So. 2d 227, 230 (Miss. 1967). "The duty to disclose is based upon a theory of fraud that recognizes that the failure of a party to a business transaction to speak may amount to

5

the suppression of a material fact which should have been disclosed and is, in effect, fraud." *Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564, 568 (Miss. 2008) (citing *Welsh v. Mounger*, 883 So. 2d 46, 49 (Miss. 2004)).

The question in this case is whether a duty to disclose arises under Mississippi law on the facts alleged in Henly's complaint. We agree with the district court's assessment that there is no final authority from the Mississippi Supreme Court conclusively deciding the issue of whether a duty to disclose exists under the circumstances presented by this case. Thus, we must rely on the Mississippi Supreme Court's decisions to provide guidance as we determine how it would resolve the issue. *Am. Int'l Specialty Lines Ins. Co.*, 352 F.3d at 260; *Keen*, 702 F.3d at 244.

In *Holman v. Howard Wilson Chrysler Jeep, Incorporated*, two customers seeking to buy a new car were actually sold a demonstrator model that had been damaged in a wreck and repaired for a sum of $2,190.38 prior to the sale. 972 So. 2d at 567–569. The purchase price of the car was $33,685. *Id.* at 568. Citing to the Restatement (Second) of Torts § 551(2)(b), (d), and (e), along with other Mississippi precedents, the Mississippi Supreme Court reversed a grant of summary judgment to the dealership, holding that the dealership might have owed a duty to disclose the repaired damage to the customers. *Id.* at 568–69. The Court found that genuine issues of material fact existed regarding whether the dealership owed a duty to disclose, including disputes as to whether "knowledge of the damage would be material to [the customer's] purchase of the automobile" and whether language in the dealership's purchase contract provided adequate notice. *Id.* at 569.

In *Green Realty Management Corporation v. Mississippi Transportation Commission*, the Mississippi Transportation Commission (MTC) purchased two pieces of undeveloped land from Green Realty as part of a road-widening

project.  4 So. 3d 347, 348–49 (Miss. 2009).  Only after construction began did Green Realty learn that the project would increase the flow of surface water onto its adjacent property.  *Id.*  The trial court granted summary judgment for the MTC, reasoning that the agency had no duty to disclose the water flow issue, but rather that Green Realty had a duty to investigate the public records, where drawings of the project were on file.  *Id.* at 349–50.  The Mississippi Supreme Court reversed, holding that "whether the drawings were on file is immaterial if the agency withheld material facts" and therefore made a "fraudulent misrepresentation."  *Id.*  "If the state agency knew it would divert water flow, which would cause damage to property . . . and remained silent as to this fact, the agency suppressed material facts.  Given that scenario, a material misrepresentation by silence was visited upon Green."  *Id.* at 351.

In analyzing the duty to disclose, *Green Realty* cited the Restatement (Second) of Torts § 551, as well as Mississippi case law and the American Jurisprudence 2d on Fraud and Deceit.  *Green Realty*, 4 So. 3d at 350 (citing *Guastella*, 198 So.2d at 230–31; *Holman*, 972 So. 2d at 568; Am. Jur. 2d *Fraud and Deceit* § 258; Restatement (Second) of Torts § 551(2)(b)).

The Restatement (Second) of Torts § 551(1) describes a general theory of liability for nondisclosure:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

No. 20-60991

Restatement (Second) of Torts § 551(1); *see also Mabus*, 13 So. 3d at 265 ("In order to be liable for nondisclosure, a party must have had a legal duty to communicate a known material fact.").

Section 551(2) has five subsections—(a) through (e)—that describe five different situations in which a duty to disclose arises:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2).

The Mississippi Supreme Court first referred to, and partially applied, a then-draft version of § 551 in *Guastella v. Wardell,* 198 So. 2d at 230, and has cited the current version of § 551 numerous times since. *See Daniels*, 235 So. 3d at 14–15; *Green Realty*, 4 So. 3d at 350; *Holman*, 972 So. 2d at 568–69;

*Welsh*, 883 So. 2d at 49–50.  Therefore, we conclude that the Mississippi Supreme Court's common law duty to disclose jurisprudence has been influenced by and derived from several sources, including but not limited to the Restatement (Second) of Torts § 551.

The Mississippi Supreme Court's duty-to-disclose decisions also include consideration of other common law sources—for example, American Jurisprudence 2d on Fraud and Deceit, *see Green Realty*, 4 So. 3d at 350.  Thus, the Mississippi Supreme Court's duty-to-disclose jurisprudence is not limited to the Restatement (Second) of Torts § 551's formulation of the duty, nor synonymous with the language of § 551.  Rather, Mississippi jurisprudence includes references to and partial applications of ideas from the Restatement (Second) of Torts § 551, but not to the exclusion of other precedents and tort principles; in other words, we do not believe the Mississippi Supreme Court intends to treat § 551 as if it were a statute so as to be bound by its every jot and tittle, and this applies especially to the "fact basic to the transaction" language in § 551(2)(e) comment *j.* relied upon by the district court.

From *Guastella*, *Holman*, and *Green Realty* emerge three requirements for a duty to disclose to arise under Mississippi law: (1) a material fact; (2) one party's knowledge that the other is under a mistake as to the fact, and (3) the other party's reasonable expectation that it would be disclosed.  *See Guastella*, 198 So. 2d at 230; *Holman*, 972 So. 2d at 568–69; *Green Realty*, 4 So. 3d at 350–51.  These requirements are also consistent with the Restatement (Second) of Torts § 551.

Applying the foregoing legal precepts, we think that the Mississippi Supreme Court would hold that Henly has sufficiently alleged facts that Merit Health had a duty to exercise reasonable care to disclose the surcharge.  First, Henly alleged that the surcharge was a material fact.  According to the

complaint, knowledge of the surcharge prior to treatment "would be a substantial factor in a patient's . . . decision to remain at the hospital and proceed with treatment." Henly alleged that she was "shocked" to learn that her bill included a surcharge of $2,201.75 ($770.61 after discounts) and "would have left and sought less expensive treatment elsewhere" if she had been informed of the surcharge beforehand. Second, Henly alleged that Merit Health was aware that patients like her were unaware of the surcharge, but nonetheless failed to disclose it. Third, Henly alleged that she had a reasonable expectation of disclosure because Merit Health holds itself out to be a "caring community-based organization" and patients like her expected Merit Health to disclose the surcharge based on the confidence and trust that they placed in the hospital.

In reaching its contrary ruling, the district court focused on the Restatement (Second) of Torts § 551(2)(e). The court considered each section of § 551(2), and determined that Henly had not pleaded sufficient facts to allege a duty to disclose arising under subsections (a)-(d). Then, the district court considered subsection (e) and its "facts basic to the transaction" language as described in comment *j*. In doing so, the district court mistakenly applied the comments to the Restatement to determine whether Henly had alleged a "basic" fact, instead of considering whether she had alleged a "material" fact.

According to § 551(2)(e) comment *j*.: "[a] basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with." The comment also distinguishes the narrower category of "basic" facts from "material" facts: "Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic." Relying solely on comment *j*, the district court ruled

that the surcharge was not "a fact basic to the transaction" because the "basis for the transaction . . . was [Henly's] need or desire for emergency medical treatment." The district court concluded that Henly's allegation that she would have sought treatment elsewhere had she known of the surcharge established that the surcharge was a "material" fact, but not one "basic" to the transaction.[4]

We disagree with the district court's *Erie* guess for two reasons. First, we think that the Mississippi Supreme Court would not rely on § 551(2)(e) comment *j.* in the manner that the district court did, applying its text and its comments like a statute, because none of the Mississippi Supreme Court cases apply § 551 or its comments as if they were strictly binding to the exclusion of all other elements of that Court's jurisprudence. Second, the distinction in comment *j* between "material" and "basic" facts, relied upon by the district court, is not found in the Mississippi duty-to-disclose caselaw.

The Mississippi Supreme Court's *Guastella* decision, which first cited to a then-draft version of § 551, used the words "basic" and "material" interchangeably. 198 So. 2d at 230 (stating that "liability for nondisclosure [] must relate to material fact[s]," referring to "knowledge of these material

---

[4] The district court also found Henly's complaint deficient because it did not allege affirmative concealment of the surcharge "nor . . . account for the fact that the existence and amount of the surcharge was accessible to [Henly] on Merit Health's online chargemaster through the exercise of reasonable diligence." We think the district court fell into error in concluding—at the pleading stage, without evidence in the record—that Henly could have ascertained the existence and amount of the surcharge by looking at Merit Health's online "chargemaster," i.e. its master price list, when the complaint did not include any allegations concerning the chargemaster or its accessibility. Henly asserts in her briefing to this court that the price list was not available online at the time she sought treatment, and that even if it had been available online, the information is not in a format reasonably usable by consumers. We take no position on this and other factual issues as they must be resolved in the district court to which we must remand the case for further proceedings.

facts" and "suppression of material facts," and in the next paragraph referring to the same as "a fact basic to the transaction"). Similar to *Guastella*, the two Mississippi cases that cite the current version of § 551(2)(e)—one from the Mississippi Supreme Court and one from an appellate court—do not apply the "facts basic to the transaction" language from comment *j* or distinguish "basic" from "material" facts. Instead, both cases referred only to a duty to disclose "material" facts. *See Holman*, 972 So. 2d at 568–69 (referring to "suppression of a material fact" and whether "knowledge of [a fact] would be material"); *Saucier v. Peoples Bank of Biloxi*, 150 So. 3d 719, 734 (Miss. Ct. App. 2014) (referring to a "duty to disclose material information" and "suppression of a material fact"). The broader Mississippi jurisprudence on negligent and fraudulent misrepresentation, of which the duty to disclose is one component, similarly refers only to "representations[s] or "omission[s]" that are "material or significant," *see e.g., Shogyo Int'l Corp. v. First Nat'l Bank*, 475 So. 2d 425, 427 (Miss. 1985), or to the "materiality" of "a representation," *see, e.g. Rankin v. Brokman*, 502 So. 2d 644, 646 (Miss. 1987).

Merit Health argues that a duty to disclose would only arise on the facts alleged in Henly's complaint if the lack of disclosure were "so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearance into a bargain that is a trap." We do not think this is an accurate statement of Mississippi law. First, in making this argument, Merit Health (as did the district court) treats the Restatement and its comments like a statute, which the Mississippi Supreme Court has not done. Second, the Mississippi duty-to-disclose jurisprudence does not consider the extent to which the nondisclosure negatively impacted the other's benefit of the bargain in deciding whether a duty to disclose exists. For example, in *Holman*, the Court did not consider what loss-in-value had been suffered by

the purchasers, nor was the extent of flooding relevant to the holding in *Green Realty*.

Merit Health also raises policy-based arguments against requiring disclosure, suggesting that a disclosure duty would be impractical and would lack any limiting principle. But these arguments ignore the limits already contained in Mississippi's duty-to-disclose jurisprudence, namely, that the duty to disclose only arises when material facts are concerned and when the other party has a reasonable expectation of disclosure. Further, these arguments ignore that the duty that arises is a "duty to exercise reasonable care to disclose," not a strict-disclosure regime, as Merit Health fears. *See Holman*, 972 So. 2d at 568; *Green Realty*, 4 So. 3d at 350.

## IV.

For these reasons, we REVERSE the district court's grant of Merit Health's motion to dismiss and REMAND for further proceedings consistent with this opinion.